WILLIAM W. BUSH, plaintiff in error, *vs.* GEORGE H. LESTER *et al.*, administrators, defendants in error.

1. Discharge in bankruptcy does not affect the prior lien of a judgment upon land set apart to the bankrupt as exempt, the creditor not having proved his debt, nor done anything to waive his lien or submit it to the jurisdiction of the bankrupt court.

2. The land is protected from levy and sale under the judgment, to the same extent only as it would have been protected by the homstead and exemption laws of this state, had no proceedings in bankruptcy taken place.

3. When the lien is that of a judgment which was rendered prior to 1868, the increased exemptions provided for by the present constitution will not hold against it.

Bankrupt. Judgments. Homestead. Before Judge POTTLE. Oglethorpe Superior Court. October Term, 1875.

Reported in the opinion.

JOHN C. REED, for plaintiff in error.

R. TOOMBS, for defendants.

BLECKLEY, Judge.

1. By the laws of Georgia a judgment has a lien from its date upon all the property of the defendant: Code, section 3580. Is this lien extinguished by the defendant's discharge in bankruptcy? This court has ruled that it is not: *Jones vs.*

*Lellyett & Smith,* 39 *Georgia Reports,* 64; *Phillips vs. Bowdoin,* 52 *Ibid.,* 544; *Barber vs. Terrell,* 54 *Ibid.,* 146. Several other cases decided by the court tend to show that judgment liens which attached prior to proceedings in bankruptcy, are unaffected, unless the creditor has proved his claim, or the property sought to be reached has been taken charge of by the assignee and administered free from liens, in the manner provided for by the bankrupt act: 40 *Georgia Reports,* 257; 43 *Ibid.,* 383; 44 *Ibid.,* 133; 52 *Ibid.,* 593. Comparing these cases with 49 *Georgia Reports,* 361, 52 *Ibid.,* 605, and 53 *Ibid.,* 208, it will be seen that the lien of a judgment has been regarded by this court as on as high grounds as that of a mortgage. Both classes of liens seem to have been considered as equally within the saving provisions of the 20th section of the bankrupt act, and as adhering to the property in any and all hands, even those of the assignee. In one of the cases cited (40 *Georgia Reports,* 257,) the court say that title passes to the assignee, but he takes it subject to the lien; and in another (43 *Georgia Reports,* 383,) they say the lien is preserved, and it is at the option of the plaintiff to proceed with his execution or go into the bankrupt court and prove his debt. The assignee may compound for a release of the lien, or he may sell subject to it, or, by an order of his court to that effect, may sell free from it. But if he sells without compounding or obtaining the requisite order, the lien, if not in some way waived, will still bind the property: Meeks *vs.* Whatley, 10 Bank Reg., 498. See, also, as to lien for taxes, even where there was an order to sell free from incumbrances, and the assignee sold accordingly: 46 *Georgia Reports,* 412.

In the present case the contest is between a judgment creditor and a mortgagee. The judgment bears date in 1867, and the mortgage in 1871. The debtor was adjudicated a bankrupt upon his petition filed on May 22d, 1873, and was thereafter duly discharged. His assets paid nothing to creditors, all his property having been allowed to him as exempt. Neither of the parties to this litigation proved in bankruptcy,

Bush *vs.* Lester *et al.*

though both had the prescribed notice of the proceeding. The mortgage was foreclosed in the state court at October term, 1873, and under that foreclosure the land was sold by the sheriff. The money thus brought into court, amounting to $2,050 00, is the subject matter of the present controversy. The mortgage was given to secure purchase money, or what the parties agreed to consider as purchase money. Before the proceedings in bankruptcy, this land was set apart to the debtor as a homestead, under the constitution of 1868. The same land was returned in his schedule and claimed as exempt in bankruptcy. There was no objection filed by creditors, and the land was allowed to him, in due form, as exempt, before his discharge was granted. There was no irregularity in allowing the exemption or in the discharge. The sheriff's sale under the mortgage *fi. fa.* took place after the proceedings in bankruptcy were completed, and so far as appears, without any resistance or objection on the part of the bankrupt.

2. A distinction is sought to be drawn between enforcing a judgment, after bankruptcy, against property never in any way dealt with by the assignee or by the bankrupt court, and enforcing it against property set apart in due form to the bankrupt as exempt, whether exempt legally as against such judgment or not. This latter is said to be administered in bankruptcy, and the former not. The distinction is unsound in so far as it is applied to exemptions measured by the state laws, and of that class is the exemption of land. The assignee acquires no title and imparts none to the bankrupt. He admeasures or values, and allows the bankrupt to retain. The latter has precisely the same title after his exempt property is set apart as he had to it before. Liens upon it are neither extinguished nor removed. His protection thereafter, as to those liens, unless he can show assets for them in the hands of the assignee, depends wholly on the state law. What has been done by the assignee is equivalent to compliance with the state statutes in assigning homestead or claiming exemption, but has no higher validity or greater sanctity. If creditors come who have compounded their liens with the as-

signee, or who have proved their claims in bankruptcy, they can be resisted. If others come who have not done so, they can enforce their liens or not, according as they might or might not have enforced them against the same property if it had been set apart under the state law, in the method prescribed by that law, without any proceeding in bankruptcy whatever. Exemption granted in bankruptcy resting on the state law has precisely the same effect against prior liens as exemption granted out of bankruptcy, or by the instrumentalities appointed by the state. In respect to the latter, it is well settled by repeated rulings, that a creditor having a lien that overrides the exemption may assert it without contesting the right with the debtor on the hearing of his application : 44 *Georgia Reports*, 14, 663; 47 *Ibid.*, 453 ; 39 *Ibid.*, 386 ; 49 *Ibid.*, 380 ; 50 *Ibid.*, 81, 626; 51 *Ibid.*, 460; *Wofford vs. Gaines*, 53 *Ibid.*, 485. In 52 *Georgia Reports*, 605, a mortgagee was allowed to foreclose after the property mortgaged was set apart to the mortgagor, in bankruptcy, as exempt. The bankrupt act preserves all liens alike, and the debtor's discharge is granted with that implied qualification. What each lien will bind (beyond what is disengaged from it by the act without reference to the state law) depends upon the exemption laws of the state.

3. According to the laws of this state the lien of a judgment rendered in 1867 will prevail (where there is no bankruptcy) over the enlarged exemptions provided for by the constitution of 1868. This proposition is not now disputed; and if it were, the cases already cited in this opinion on other points, would place it beyond question. The principle of uniformity which the bankrupt act has observed with regard to the main bulk of its exemptions, is to adopt the laws of the several states, with a maximum limit to the amount exempted by the laws in force in 1871. There was, in 1871, no law of this state which accorded to judgment debtors, on debts dating in 1867, these large exemptions. We hold with the chief justice of the United States (*in re* Daniel Deckert, 10 B. Reg. 1,) that the amending act of March 3, 1873, was

unsuccessful in making unconstitutional provisions in state laws a part of the system of bankruptcy: See, also, the opinion of BALLARD, judge, in 13 B. Reg., 183.   It was competent for congress either to have passed one uniform original law of exemption, irrespective of state laws, or to have adopted the latter as they were of force, or might become of force, within the several states; but it was not competent, we think, for it to impart to one or all of the latter, a force in the courts of the United States which, as solemnly decided by the supreme court of that government, they do not have, never did have, and never can have in the domestic tribunals of the states which enacted them.   As to debts contracted prior to July, 1868, the true and only law of Georgia, measuring exemptions, is the Code.   That was the law in force here in 1871; and no other exemption law of the state of Georgia was then operative upon the class of debts in question, and has not been since, and never can be.   Without some *law,* either state or federal, there can be no exemption, even in bankruptcy.   The constitution of 1868 was, as to debts older than itself, no state law in 1871 and is none now.   Congress, by engrafting it upon the bankruptcy system, made it federal law so far as it was state law, and no further.   Not the words of it but the legal essence of it passed into the statutes of the United States. It is the same law in them as out of them; and ought to receive the same construction and have the same. effect.   The only change is, that since its adoption by congress it is the law of two governments instead of one; and this principle of duplication is the principle of uniformity which saves the present bankruptcy system from being unconstitutional.

We affirm the judgment ordering the fund to be paid to the older lien.