SOSNOWSKI *et al. vs.* RAPE, sheriff, *et al.*

1. A discharge in bankruptcy does not discharge the lien of a judgment rendered prior thereto upon the bankrupt's land set apart as an exemption, the creditor having never proved the debt or otherwise waived his lien in the bankrupt court.

2. But property acquired by the bankrupt since his adjudication is not subject to a judgment rendered before the adjudication, even though it may never have been proved in the bankrupt court.

3. Where a debtor conveyed the title to land, although it was to secure a debt, prior to the rendering of a judgment against him, and after judgment and discharge in bankruptcy again acquired title for value, the lien of the judgment did not attach to it, and in a contest over the fund arising from the sale of the land between the udgment and a mortgage *fi. fa.,* founded on a mortgage made

subsequently to the re-acquirement of title, the latter would take the fund.

4. Evidence as to conduct of the plaintiff in mortgage *fi. fa.* on the day of sale, whereby the price of the property was lessened, was irrelevant, and could not benefit the claimants under the judgments.

September 26, 1882.

Liens. Judgments. Bankruptcy. Evidence. Before Judge CRISP. Dooly County. At Chambers. March 1, 1882.

To the report contained in the decision, it is only necessary to add, in connection with the fourth division thereof, that on the trial Sosnowski *et al.* offered to prove by Drumright, the holder of the mortgage *fi. fa.* under which the property was sold, that he learned on the day of sale that one Gunn was present for the purpose of bidding, and was willing to pay $2,600.00 for the property; that Drumright thereupon agreed with Gunn that if the latter would not bid against him, he would buy the property and let Gunn have it for $2,600.00; and that under this agreement Drumright did buy the land for $1,775.00, and immediately sold it to Gunn for $2,600.00. This evidence was rejected, and error was assigned thereon in the bill of exceptions.

FISH & DUPREE; HAWKINS & HAWKINS; JOHN B. HOLMES; DUNCAN & MILLER, for plaintiffs in error.

HALL & SON, for defendants.

SPEER, Justice.

This was a rule against the sheriff in Dooly superior court to distribute certain money in his hands, arising from the sale of certain lands, as the property of John G. Thomas, under a mortgage *fi. fa.* in favor of W. P. Drumright, transferee, *vs.* Thomas. By consent of counsel, both the law and facts were submitted to Judge C. F.

Crisp, presiding, and to the judgment he made in distributing the fund, exceptions are taken and errors assigned. The contest here is between the alleged liens of certain *fi. fas.* and the lien of the mortgage *fi. fa.* From the record it appears that the plaintiff in error, Sophia Sosnowski, obtained a judgment against the defendant, Thomas, and *fi. fa.* issued thereon on 3d of April, 1873; that the *fi. fa.* of Evans, the other plaintiff, against Thomas, issued on 25th of September, 1873; that the mortgage upon the property sold was executed by Thomas, the defendant, to McLendon on the 13th of January, 1877; that the same was subsequently foreclosed, and the *fi. fa.* issuing thereon was transferred to Drumright, one of the defendants in error, and who had the property mortgaged levied on and brought to sale, the same realizing the sum of $1,775.00, and the distribution of which to these claimants is the matter in issue.

It further appears that the defendant, John G. Thomas, was adjudicated a bankrupt on the 24th of February, 1874, and finally discharged 21st of May, 1875, and was in pos. session at the time of 1,692 acres, the land mortgaged and sold, and which had remained in his possession until the sale. The evidence further shows that the defendant, Thomas, with a view of securing a debt he was owing the firm of Ketchum & Hartridge, for the sum of $8,100.00, executed and delivered to them a deed of conveyance, embracing the land sold, containing in all 1,782 acres, and certain personal property, with warranty of title, and on the day of execution thereof received from Ketchum & Hartridge their bond to re-convey said lands on the 1st of December, 1872, on the payment of said sum. The deed bore date 29th of February, 1872; and it was covenanted in the deed that Thomas thereafter held said land as the tenant of Ketchum & Hartridge. The deed was duly recorded in the proper office.

It further appears that, after this conveyance, Ketchum & Hartridge were adjudicated bankrupts, and their as-

signees by petition to the judge of the district court, sitting in bankruptcy, and after notice, by the order of said court were authorized and directed to compromise the claim held against said Thomas, and in making said compromise, in consideration of seven hundred and fifty dollars to the assignee, paid by Thomas on the 27th day of January, 1877, they relinquished all right and title to the land conveyed by Thomas to Ketchum & Hartridge, and re-conveyed in writing the same to Thomas, his heirs and assigns, etc. The record further shows, that on the 13th of January, 1877, Thomas mortgaged said land to McLendon to secure a debt for $1,190.50 due to him waiving homestead, etc., and under the foreclosure of which the land was sold. It also appears that, pending the bankrupt proceedings, the land was set apart to Thomas as a homestead by the assignee.

The questions to be determined under these facts are, whether the proceeds of the land sold should be paid to the older judgments of the plaintiffs in error, or whether the mortgage *fi. fa.* was entitled to the same. The judge awarded the fund to be paid to the mortgage *fi. fa.* to the exclusion of the judgments of the plaintiffs in error, and this is the main error complained of.

1, 2, 3. We are aware that this court has repeatedly ruled, "that a discharge in bankruptcy does not discharge the lien of a judgment rendered prior to the discharge upon the bankrupt's land set apart as a homestead, the creditor never having proved the debt or otherwise waived his lien in the bankrupt court." 60 *Ga.*, 633, 375 ; 61 *Ga.*, 500, etc. But the question here is, did these plaintiffs in error, Sosnowski and Evans, have, at any time prior to the final discharge of Thomas in bankruptcy, any lien upon these lands? The judgment of Sosnowski was dated in April, 1873, and that of Evans in September, 1873, when the evidence shows without controversy that Thomas had conveyed *bona fide* these identical lands to Ketchum & Hartridge on the 29th February, 1872, more than a year

before the oldest judgment. It is true the conveyance was made to secure a debt he owed these feoffees, but still, such a conveyance was a legal one and passed all the title out of Thomas, and there was nothing left in him upon which a judgment lien could attach. In *Phinizy vs. Clark*, 62 *Ga.*, 623, it was ruled, that "an absolute deed, though made as security for a debt, passes title, and a judgment subsequently rendered against the grantor has no lien upon the land that can be enforced by levy and sale until the title has become re-vested by redemption." And this ruling was affirmed at the present term of the court, in the case of *Graves vs. Williams*, not yet reported. It is evident, then, under the facts, that these judgments had no lien upon this property prior to Thomas' discharge; and as there was no lien upon this property, the discharge in bankruptcy discharged the debt as to this land without affecting its lien upon any other property that might have been subject thereto. 3 Howard, 327; 7 *Ib.*, 620; 5 *Ga.*, 437. But if there was no lien at the time of the discharge, after the discharge of the debt in bankruptcy, can there be any future lien on this property when subsequently acquired? The evidence shows, that after his discharge in May, 1875, that is on the 27th January, 1877, nearly two years after his final discharge from all his debts, that for value he again became vested with the title to these lands, executed by the assignee of Ketchum & Hartridge by authority of the bankrupt court. Was not this a "subsequent acquisition" of the bankrupt, long after his discharge? And if so, the doctrine is too well settled, both upon principle and authority, "that all the acquisitions of a bankrupt, made even after filing his petition in bankruptcy, are exempt from liability to pay any debts previously contracted." 9 *Ga.*, 9.

In the language of this court, in the case of *McLendon vs. Turner*, 65 *Ga.*, 577, it was held, "Property acquired by the bankrupt since his adjudication, is not subject to a judgment rendered before, even though it may never have been proved in the bankrupt court."

Holding, as we do, under the facts in this case, that the liens of the judgments of plaintiffs in error never did attach, either before or since the adjudication in bankruptcy, to the land sold, and the proceeds of which were before the court for distribution.

3. We see no error in the court excluding the testimony offered as to the conduct of Drumright on the day of sale. It was irrelevant, and could not aid the plaintiffs in the prosecution of their supposed liens. Our conclusion, then, is, there was no error in the ruling of the court in refusing to apply the proceeds of this sale to the plaintiff's *fi. fas.* to the exclusion of the lien of the mortgage *fi. fa.*

