## BROACH *vs.* POWELL, executor, *et al.*

1. An express waiver of homestead in mortgaged premises, contained in the mortgage deed, is a renunciation of the homestead right, whether the right could be asserted at the time of executing the deed or not.  Hence, such a waiver by a single man will bar his claim of homestead when he afterwards marries.
2. That mortgaged property is subject to be administered in bankruptcy, will not entitle the mortgagor to resist the administration of it by foreclosure and sale under proceedings in the appropriate court of the State.

   April 16, 1887.

Homestead.  Waiver.  Mortgage.  Renunciation.  Bankruptcy.  Before Judge LAWSON.  Jones Superior Court. April Term, 1886.

Reported in the decision.

NISBET, EDGE & NISBET; LYON & GRESHAM, for plaintiff in error.

DESSAU & BARTLETT, for defendant.

BLECKLEY, Chief Justice.

In 1874, a mortgage was executed upon a thousand acres of land, to secure a debt of $1,900.  The mortgage deed contained a waiver in these terms:  "I hereby waive all right to homestead in the above described land."  In August, 1876, the mortgagor married.  In October thereafter he was adjudicated a bankrupt on his own petition.  Afterwards, in the same month, the mortgagee commenced proceedings against him in the superior court to foreclose the mortgage.  A petition was filed and a rule *nisi* granted.  Personal service of the rule was effected upon the mortgagor in December of that year.  At what precise date does not appear, but doubtless soon after his appointment, the assignee in bankruptcy laid off and set apart to the bankrupt six hundred acres of the mortgaged land as

exempt, and rented to him for the years 1877 and 1878 the other four hundred acres. In January, 1877, the assignee caused a written notice to be served on the mortgagee that application would be made on a certain day to the register in bankruptcy for an order to sell all the real estate of the bankrupt, free from liens and incumbrances. On the specified day, which was in February, 1877, the register passed an order for a sale of the four hundred acres, free from liens and incumbrances. Five days later this order was approved by the district judge. No sale, however, took place, and the bankrupt remained in possession of the whole tract, both the exempt and the non-exempt parcels.

The rule to foreclose was returnable to the April term, 1877, of the superior court. During that term, on April 17th, the bankrupt, in answer to the rule, filed certain pleas, amongst them one setting up that the court ought not to foreclose the mortgage, because of the bankruptcy. There was no express objection to the jurisdiction, but rather the jurisdiction was by implication admitted and submitted to; for in his pleas, the bankrupt alleged that equitably the part of the land exempted to him in bankruptcy as a homestead ought not to be sold until the other part had been sold. The pleas were all demurred to and stricken, and on the 18th of April, a rule absolute was granted foreclosing the mortgage.

On the 26th of April, a *fi. fa.* was issued upon this judgment of foreclosure. In January, 1878, the mortgagor had set apart to him by the ordinary of the county, under the State law, a homestead covering the same premises, the same six hundred acres, that had previously been set apart to him as exempt by the assignee in bankruptcy. In March, 1878, the bankrupt was discharged from his debts in terms of the bankrupt law. This mortgage debt was never proved in bankruptcy, nor otherwise referred to that jurisdiction for allowance or adjustment. In March, 1886, the mortgage *fi. fa.* was levied upon the whole of the mort-

gaged premises; and in April following, an affidavit of illegality to the *fi. fa.* and the levy was presented by the mortgagor; which being overruled, this writ of error was brought.

The grounds of the affidavit relied on here were two : (1) that the bankruptcy proceedings, as a whole, deprived the superior court of jurisdiction to render a judgment of foreclosure upon the mortgage; (2) that if the foreclosure was proper and legal, the premises set apart as exempt in bankruptcy, and afterwards set apart as a homestead by the ordinary, are not subject to sale now. The latter brings up the effect of waiving, in the mortgage deed, " all right to homestead," and will be considered first.

1. The right to homestead or exemption is personal to the debtor, the owner of the property; and its exercise or non-exercise is subject to his decision. *Bowen vs. Bowen*, 55 *Ga.* 182. That he can make his decision by waiver as to specific property at the time of creating a lien upon it for securing a debt, is firmly established. *Simmons vs. Anderson*, 56 *Ga.* 53 ; (approved in *Stafford vs. Elliott*, 59 *Ga.* 838); *Allen vs. Frost, Id.* 558; *Flanders vs. Wells*, 61 *Id.* 195 ; *Smith vs. Shepheard*, 63 *Id.* 454; *Jackson vs. Parrott*, 67 *Id.* 210. Under the constitution of 1877, he can even affect all his property (save the small amount expressly excepted in the constitution) by a general waiver. *Flemister vs. Phillips*, 65 *Ga.* 676; *Boroughs vs. White*, 69 *Id.* 842. This, being an enlargement of the right and power to waive, indicates a liberal public policy in behalf of waiver. For, prior to the new constitution, a general waiver was ineffectual. *Stafford vs. Elliott* (*supra*), 59 *Ga.* 837; approved and applied in *Green vs. Watson*, 75 *Id.* 472, 473.

According to this unbroken line of authority, the waiver contained in the mortgage now before us, if treated as a waiver at all, renders the mortgage superior to the homestead granted by the ordinary in January, 1878, some four years after the mortgage was executed. And the exemp-

tion in bankruptcy left the title of the debtor to the exempted land precisely as it was before. *Bush vs. Lester*, 55 *Ga.* 581; *Farmer vs. Taylor*, 56 *Id.* 559; *Broach vs. Barfield*, 57 *Id.* 604; *Burtz vs. Robinson*, 59 *Id.* 763; *Laramore vs. McKinzie*, 60 *Id.* 534; *Brady vs. Brady*, 67 *Id.* 368; *Felker vs. Crane*, 70 *Id.* 484; *Anderson vs. Brown*, 72 *Id.* 713. The bankrupt law, in and of itself, afforded the land no protection whatever against the specific lien upon it created by mortgage, notwithstanding it was duly set apart as the bankrupt's exemption. Long *vs.* Bullard, 112 U. S. 617. This court, however, construing the bankrupt law and the State law together, has, by a very liberal construction, determined that as to exemptions in bankruptcy measured by the latter (and so are all exemptions of land), the due setting apart in bankruptcy has the same effect in holding off prior liens (that is, liens existing at the time of the adjudication), as would a regular setting apart by proceedings before the ordinary in the method prescribed by our own statute. *Rushing vs. Gause*, 41 *Ga.* 180; *Bush vs. Lester* (*supra*), 55 *Id.* 582; *Benedict vs. Webb*, 57 *Id.* 348; *Ross vs. Worsham*, 65 *Id.* 624; *Brady vs. Brady*, 71 *Id.* 71; *Collier vs. Simpson*, 74 *Id.* 697. This rule, applied to specific liens, certainly goes quite far enough in giving effect to exemption obtained in bankruptcy. In view of the express provisions of the bankrupt act, and of the construction placed thereon by the Supreme Court of the United States, it would be absurd to hold that such an exemption would be more efficacious against a mortgage lien than would be a homestead procured before the ordinary. The result is, that both together will count for no more in the present case than would either one separately, and that if the waiver in question will prevail over either it will prevail over both.

We have already seen that if treated as a waiver at all, it will prevail. The only question not decisively ruled by the foregoing authorities is, whether it can be so treated. And why can it not? The sole reason urged in the argu-

ment was, that the mortgagor, not having married until
after the mortgage was executed, was not the head of a
family when he executed the mortgage and made the
waiver.   It is said he could not waive what he did not
have, and that he had no homestead right, but acquired
it afterwards upon his marriage.   True, he did not have
a complete unconditional right, but he had an inchoate or
contingent right, and he waived "all right"; this inchoate
or contingent right being surrendered by the waiver, did
not remain with him so as to mature into a complete and
perfect right on his subsequent marriage.   While, with
some exceptions not now material, no person but the head
of a family can take a homestead, yet every person, male
or female, in Georgia, capable of ever becoming the head
of a family has a homestead right, either complete or in-
complete.   And we know of no obstacle to waiving a
right of the latter kind, as freely as one of the former.
A wife has no complete right to dower in specific land so
long as her husband is alive, yet she can bar herself by a
proper relinquishment or renunciation.   An indorser has
no complete right to notice of dishonor until dishonor has
occurred, yet he can waive notice beforehand.   And in
*Boroughs vs. White (supra)*, 69 *Ga.* 842, this court con-
sidered, amongst other things, the waiver of a homestead
right much more contingent than the one now in question,
and pronounced it effective.   In that case a promissory
note was executed before the constitution of 1877 went
into effect, which note contained a general waiver of
homestead.   Though under the law as it then stood such
a waiver was good for nothing, the court held that it
avoided a homestead taken afterwards under the consti-
tution of 1877.   Moreover, the homestead right there as-
serted not only rested for its completion on a subsequent
organic law, but upon new grounds of homestead brought
into the system by that law.   Thus, a double contingency
had to be realized in order to perfect the right to which
the waiver was applied.   Here, on the contrary, the sin-

gle event of marriage was alone necessary to perfect the right, an event much less contingent in its nature than the adoption of a new constitution, even were there always with us an Abbé Sieyés to prepare and propose them.

That the waiver of a homestead bears some analogy to a quit-claim is true. *Tribble vs. Anderson*, 63 *Ga.* 54, 55. But is there any reason why there may not be a valid quit-claim, renunciation or relinquishment of a contingent, the same as of a vested, interest? If it be that a quit-claim can operate only where some estate is in *esse* at the time it is executed, then there certainly can be no quit-claim to a homestead by waiver at all; for before the homestead is allowed the homestead estate is not in being, and after it is allowed there can be no waiver. The moment the homestead right becomes a complete vested right, it is no longer waivable, for nothing will vest it short of securing the homestead. *Harris vs. Glenn*, 56 *Ga.* 94. Up to that stage the right, no matter how perfect the conditions for its exercise may be, is a mere grace or privilege, and it may be abjured or renounced as well under incomplete conditions as under complete ones. Were this not so, a general waiver of homestead under the constitution of 1877, would be effectual only when made by heads of families, etc., and only as to property owned by them at the time of making the waiver. The creditors of unmarried men would be at the mercy of the matrimonial instinct, and all creditors would have to take the hazard of being excluded by a claim of homestead from resorting for payment to the future acquisitions of their debtors. For, to complete the conditions for asserting the homestead right, property is no less necessary than family; and if waiver could not anticipate the acquisition of a family neither could it anticipate the acquisition of property.

We were pressed in the argument with the case of *Benedict vs. Webb* (*supra*), 57 *Ga.* 348, but that case has no application to the question. True, there was a future marriage, and from that marriage the court said there re-

sulted a new homestead right, a right other than the one that had been set up and allowed in a previous proceeding. But why did the new right result from the second marriage? Simply because there had been no waiver of homestead whatever. If there had been, as there is in the present case, a waiver of "all right to homestead," the decision ought to have been, and doubtless would have been, directly the reverse of what it was. An express waiver of homestead in mortgaged premises, contained in the mortgage deed, is a renunciation of the homestead right, whether the right could be asserted at the time of executing the deed or not. Hence, such a waiver by a single man will bar his claim of homestead when he afterwards marries.

2. In Georgia the exclusive jurisdiction to foreclose (between citizen and citizen) mortgages on real estate is in the superior court, notwithstanding exclusive jurisdiction in bankruptcy, and over the bankrupt effects so far as necessary to administer them according to the bankrupt law, is in the courts of the United States. Touching the foreclosure of mortgages, the bankrupt court has no concurrent jurisdiction with the superior court, nor any jurisdiction at all. The bankrupt court never forecloses mortgages. Unless the mortgagee voluntarily comes in and proves his debt, that court will not deal with his mortgage at all otherwise than through the assignee; and the assignee can administer the mortgaged property as assets only by compounding for a release of the lien, or by selling the property subject to the lien, or by obtaining the requisite order from his court and then selling it free from the lien. *Bush vs. Lester (supra)*, 55 *Ga.* 580. If the assignee does not choose to do one of these three things, he has no duty of administration to perform touching either the property or the mortgage. Will proceedings to foreclose commenced after the adjudication of bankruptcy, and carried on against the bankrupt mortgagor, in the superior court, hinder, delay or obstruct the assignee in

respect to either of these three things? Clearly not. He can compound, he can sell subject to the lien, or he can sell free from the lien, whilst the proceedings are pending, or even after they are terminated, just as effectually as he could were no such proceeding ever begun. Being no party, the assignee will not be bound by the judgment of foreclosure. *Williams vs. Terrell*, 54 *Ga.* 463; *Lilienthal vs. Champion*, 58 *Ga.* 162; *Frost vs. Borders*, 59 *Ga.* 819; *Hall vs. Davis*, 73 *Ga.* 101; *Mims vs. Wight*, 78 *Ga.* 12. But surely this is no reason against the jurisdiction of the superior court over the mortgagor, or why he should not be bound by the judgment of that court. Neither as to liens nor as to the remedy for enforcing them is he dead by bankruptcy. As to mortgages, see *Cumming vs. Clegg*, 52 *Ga.* 605; *Hatcher vs. Jones*, 53 *Ga.* 208; *Price vs. Amis*, 58 *Ga.* 604; *Benedict vs. Webb*, 57 *Ga.* 348; *Toler vs. Passmore*, 62 *Ga.* 263; *Ross vs. Worsham*, 65 *Ga.* 624; *Brady vs. Brady*, 71 *Ga.* 71; *Collier vs. Simpson*, 74 *Ga.* 697. Also, the language of McCay, J., in *Woolfolk vs. Murray*, 44 *Ga.* 137, where, speaking of the bankrupt law, he says: " That law does not pretend to take as the property of the bankrupt anything which is not legally and equitably his; nor does it contemplate interfering with specific liens third persons may have under laws of the State, upon property included within the schedule." And as to general judgment liens, see *Jones vs. Lellyett*, 39 *Ga.* 64; *Sharman vs. Howell*, 40 *Ga.* 257; *Thompson vs. Moses*, 43 *Ga.* 383; *Phillips vs. Bowdoin*, 52 *Ga.* 545; *Winship vs. Phillips*, *Id.* 593; *Barber vs. Terrell*, 54 *Ga.* 146; *Bush vs. Lester*, 55 *Ga.* 579; *Wheeler vs. Redding*, *Id.* 87; *Darsey vs. Mumpford*, 58 *Ga.* 119 *Hiley vs. Bridges*, 60 *Ga.* 375; *Cooper vs. Dearing*, *Id.* 633; *Fleming vs. Butts*, 63 *Ga.* 231; *Dixon vs. Lawson*, 65 *Ga.* 661; *Urquhart vs. Leverett*, 69 *Ga.* 92; *Sosnowski vs. Rape*, 69 *Ga.* 548; *Jeffries vs. Bartlett*, 75 *Ga.* 230; *Shipp vs. Smith*, 76 *Ga.* 1.

Inasmuch as the proceeding to foreclose the mort-

gage was begun after the adjudication, and was against the mortgagor alone, there was not the least inconsistency between that proceeding and any right of the assignee, for the reason that no right of the assignee was or could be affected by it. And the mere fact that the judgment of the superior court must be rendered subject to all the assignee's rights, was not a jurisdictional fact at all. It did not qualify the power of that court to entertain the case and render a judgment, but only qualified the effect of the judgment when rendered. It was enough that the superior court had jurisdiction both of the person of the defendant, who was the mortgagor, and the subject-matter, which was the foreclosure of a mortgage upon realty. And this it had. Code, §3962. The mortgagor is undoubtedly bound. That mortgaged property is subject to be administered in bankruptcy, will not entitle the mortgagor to resist the administration of it by foreclosure and sale under proceedings in the appropriate court of the State.

Judgment affirmed.