## BARRETT & CASWELL *vs.* DURHAM.

1. Where land was set apart to a bankrupt as an exemption by the bankrupt court, this had the same effect in holding off prior liens of creditors, or liens existing at the time of the adjudication, as if the exemption had been regularly set apart by a proceeding in the court of ordinary in the methods prescribed by the laws of this State.

2. Where a homestead has been set apart, either under the constitution of 1868 or that of 1877, it exists as long as the family for whose use it was set apart exists and reside in this State. And where an exemption in bankruptcy was set apart to a debtor who had a wife and minor children, a mortgage *fi. fa.* previously obtained could not proceed against it so long as the wife lived or the minor children were under age.

3. The adjudication in bankruptcy did not divest the title of the bankrupt to the property set apart to him as an exemption, and he could have sold it; but had he done so, he could not have divested the lien of a mortgage *fi. fa.* obtained prior to the adjudication in bankruptcy. After his death, his administrator, under a proper

order, could have sold the property, and all the debts and liens against the bankrupt, obtained subsequently to his discharge, would be divested from the land and attached to the proceeds of the sale in the hands of the administrator, such debts being represented by the latter; but where a mortgage was executed and foreclosed prior to the adjudication in bankruptcy, and the claim was not proved in the bankrupt court, the discharge of the bankrupt operated to discharge the debt against him, leaving only the lien upon the land expressly preserved by the bankrupt law. Therefore such a mortgage *fi. fa.* was not a debt which the administrator could recognize as sharing in the proceeds of the sale of the land; nor could he divest such lien by an administrator's sale; but after the family of the debtor had ceased to exist, the holders of the mortgage *fi. fa.* could proceed to levy upon the land and bring it to sale.

4. The mortgage having been duly recorded, the purchasers at the administrator's sale took with notice that, although the debt against the bankrupt was discharged, the lien on the land remained, and would so continue to remain until the widow of the bankrupt died and the minor children became of age.

5. This decision is not in conflict with that in the case of *Newsom vs. Carlton*, 59 *Ga.* 516, where no homestead or exemption had been set apart by the ordinary or the bankrupt court.

December 19, 1887.

Bankruptcy. Homestead. Exemptions. Mortgages. Executions. Liens. Administrators and executors. Vendor and purchaser. Notice. Before Hon. C. D. McCutchen, judge *pro hac vice.* Gordon superior court: February term, 1887.

Reported in the decision.

Frank H. Miller and W. J. Cantrell & Son, for plaintiffs.

E. J. Kiker and W. R. Rankin, for defendant.

Simmons, Justice.

It appears from the record that R. M. Young, of Gordon county, executed his note and mortgage to Barrett & Cas-

well, of Augusta, Georgia, for $5,891.31, on the 31st of August, 1871. The mortgage was given on the following, with other parcels of land, to-wit: The east half of lot 260, all of lot 261, and 100 acres on the west side of 262, in the 14th district and third section of Gordon county. The mortgage was foreclosed on the 26th of August, 1874, for principal and interest, and execution was issued thereon. Young was adjudicated a bankrupt on the 3d of April, 1875, and was discharged on the 17th of December, 1875. The plaintiffs did not prove their claim in bankruptcy. The land above described was set apart by the register in bankruptcy to Young as an exemption. At the time of setting apart the exemption, Young had a wife and several minor children. Young died in the spring of 1878. J. M. Reeves was appointed administrator on his estate at the June term, 1878, of the court of ordinary of Gordon county. At the September term, 1878, of said court, he obtained an order from the ordinary to sell said land for the purpose of distribution and payment of debts, and did sell it on the first Tuesday in December, 1878, to Foster & Harlan, partners. It appears that the widow of Young attended said sale and did not object thereto. Foster died in 1881, and Harlan, as surviving partner, sold said land to Durham, the defendant in error, on the 14th of February, 1883.

When Young died, he left a widow and two minor children. The widow died July 20th, 1883, and the youngest child became of age some time in the year 1885. Foster & Harlan went immediately into possession of the land after the sale in December, 1878, but received no conveyance from the administrator until December 1879, when the purchase money was fully paid. They remained in possession thereof until they sold to Durham in February, 1883, and Durham went into possession and remained on the land up to the time of the levy of the mortgage *fi. fa.* of Barrett & Caswell, to-wit, April 27th, 1886. The *fi. fa.* was levied on the east half of lot 260, all of lot 261, and

100 acres on the west side of lot 262. Durham interposed a claim on the 19th of May, 1886, to the east half of lot 260, and all of 261 which lies west of the public road leading from Calhoun to Rome.

Upon the trial of the case, the jury, under the charge of the court, found the property not subject. The plaintiffs made a motion for a new trial upon the several grounds contained therein, which was overruled by the court, and the plaintiffs excepted, and bring the case to this court for review. The view we take of this case renders it unnecessary to pass upon all the grounds of the motion insisted upon before us.

Exception is made in the 5th ground because the court refused to charge, as requested by the plaintiffs in writing, as follows: "The lien sought to be enforced in this case was given by Young in his lifetime to the plaintiffs, and I charge you that no sale could be made of this property by the administrator of Young which would divest plaintiffs' lien." . . . . . . . .

The 7th ground of the motion for new trial is, "Because the court erred in giving the following charge to the jury: 'The homestead in evidence set apart by the assignee in the bankrupt court, is a provision for the protection of the beneficiaries of the homestead, in the enjoyment and use of the property, as against the creditors of R. M. Young; and if the beneficiaries acquiesced in the sale of the property by the administrator, the creditors of Young cannot complain as such, and the sale, if otherwise valid, would be good as against the plaintiffs here to pass the title out of the estate of Young. If there was a valid order of the court of ordinary authorizing the sale by the administrator, and the sale was had in every respect in accordance with law, the plaintiffs' lien in the land would be divested by the administrator's sale and transferred to the proceeds of the sale in the administrator's hands.' "

We think the court erred in giving this charge and in refusing to give the charge as requested by the plaintiffs.

This land now claimed by Durham was set apart as an exemption to Young by the bankrupt court. When it was so set apart, it had the same effect in holding off prior liens of creditors, or liens existing at the time of adjudication, as if it had been regularly set apart by a proceeding in the court of ordinary in the methods prescribed by our own State law. This court has so held in numerous cases. See *Broach vs. Powell*, decided at the last term of this court; *Collier vs. Simpson*, 74 *Ga.* 697; *Ross vs. Worsham*, 65 *Ga.* 624, and other cases cited in *Broach vs. Powell*, 79 *Ga.* 79.

This court has also held that, where a homestead or exemption has been set apart under the laws of Georgia, that homestead or exemption, either under the constitution of 1868 or under the constitution of 1877, exists as long as the family for whose use it was set apart exists and resides in this State. *Nelson vs. The Commercial Bank*; *Hart vs. Evans*; and *First National Bank of Chattanooga vs. Massengill, ante*, pp. 328, 330, 333.

This land having been set apart as an exemption to Young by the bankrupt court, and Young having at the time a wife and minor children, under the construction put upon said exemption or setting apart by the bankrupt court, this mortgage *fi. fa.* could not proceed against this land so long as the wife lived or the minor children were under age. The widow living until 1883, and the youngest child not becoming of age until 1885, the *fi. fa.* was held off from this exempted property until the latter time, and it would have been illegal for any sheriff in this State to have levied this *fi. fa.* upon the same.

But it was claimed by the counsel for the defendant in error that the adjudication in bankruptcy did not divest Young's title to this land, but that the title remained in him the same as if he had never been adjudged a bankrupt. The title remaining in him, Young was authorized to sell the land exempted or set apart to him, and if he could do so, his administrator, who represented him, was authorized

to sell upon his obtaining a proper order from the court of ordinary. This construction of the law we think is correct. Young could have sold this land in his lifetime, but if he had sold it, he would have sold it subject to the lien of this mortgage *fi. fa.* No sale that he could have made would have divested this lien. If Young could have sold it, his administrator, upon a proper order, could have sold it, as Young could have done; and all the debts and liens against Young, made subsequent to his discharge in bankruptcy, were represented by the administrator, and when he sold this land, these debts and liens were taken off the land and were placed on the funds in the hands of the administrator, the proceeds of the sale. But the error the court committed on the trial of this case was in treating this lien of Barrett & Caswell as a debt against Young, and holding that the administrator represented Barrett & Caswell as a creditor of Young individually or personally. The law is, that when Young was discharged in bankruptcy, the debt, the foundation of the lien, was also discharged as a debt against Young personally; but the bankrupt law expressly retains the lien of the mortgage on this land. It discharges Young from the debt, but preserves the lien on the land. It was no debt against Young; and if Barrett & Caswell had applied to Reeves, the administrator, to share in the proceeds of the sale of that land, he would have been justified in refusing to recognize the lien of their mortgage. It was a thing that he had no power to recognize in any way. His intestate had been discharged from the debt, and by operation of law, the lien instead of existing against Young personally, existed only against the land. Barrett & Caswell, as before remarked, could not have levied on and sold this land as long as there was a widow or minor children. The law held off their lien until the widow died and the children became of age. If the law held them off until that time, and Young died, and the administrator sold before that time, they would have had no right to participate in the proceeds of that sale,

but their lien would have been preserved until the widow died and the children became of age. These two events having happened, their lien which had been so long inactive became active, and they asserted it by levying it upon this property. Nor could the purchasers at the administrator's sale, or Durham who holds under them, resist this levy, because, the mortgage having been duly recorded, they purchased with notice that, although the debt against Young was discharged, the lien on the land still lived, and would continue to live until the widow died and the minor children became of age. This being the law, we hold that the court erred in refusing to give in charge the request set out in the fifth ground of the motion for a new trial, and in charging as complained of in the 7th ground of the motion.

This opinion is not in conflict with the decision in the case of *Newsom, adm'r, vs. Carlton, adm'r,* 59 *Ga.* 516. In that case it was held that, where an administrator sold land under a proper order of the court of ordinary, the sale "divested the lien of mortgages from the mortgaged property and transferred that lien to the fund that property brought." In that case, no homestead or exemption had been set apart by the ordinary or by the bankrupt court. The debts of the intestate which the mortgage was given to secure still existed as debts against the deceased, and there was nothing to prevent the levy and sale of the property under execution by the sheriff; and .court properly held that, upon a sale by the administrator under a proper order, the lien of the mortgage was divested from the land and was transferred to the fund in the hands of the administrator. In this case, we have shown that the lien of the mortgage belonging to Barrett & Caswell was held in abeyance by the act of setting apart this land as an exemption by the bankrupt court, and that they had no right to levy or to sell as long as the widow lived or the children were under age.

Judgment reversed.