## SAUL v. BOWERS et al.

1. Where A executes and deliveres to B a promissory note for value received, in which A waives any and all homestead or exemption rights for himself and family, and, "for and in consideration of the sum of $1.00, and the further consideration of renewing our admitted indebtedness to the payee of this note, I, or we, jointly and severally transfer, assign, and convey to the owner of this note a sufficient amount of my, or our, homestead and exemption to pay this note in full, principal and interest, attorney's fees and costs. I, or we, hereby request and direct the trustee to deliver to the owner of this note a sufficient amount of property or money claimed as exempt to pay off the amount so allowed on this debt," such quoted language is sufficient to transfer and assign the right, title, and interest of A to whatever homestead and exemption right A may have under the laws of this State.

2. Where, subsequently to the execution of the note referred to in the preceding headnote, A files a voluntary petition in bankruptcy in which he claims exemption rights, and he is adjudged a bankrupt in the bankruptcy proceedings, and the referee in bankruptcy sets aside certain property to him as being exempt under the laws of this State, and where, subsequently to the setting aside of such exemption A transfers and assigns the exemption to C for a stated consideration, in a contest between B and C as to the proceeds of the exemption so set aside B is entitled thereto as against C, the only issue in the case being whether the assignment of the exemption from A to B is valid.

3. The trial court erred in holding that the clause in the note quoted in headnote 1 above was invalid and without legal effect, and in refusing the injunction prayed for.

No. 3377. April 12, 1923.

Petition for injunction. Before Judge Hodges. Franklin superior court. July 17, 1922.

J. Saul, doing business under the trade name of J. Saul & Company filed an equitable petition for himself and any other creditors similarly situated, against J. F. Bowers, and alleged as follows: Bowers is indebted to the plaintiff in the sum of $1133.97 with interest, evidenced by twenty promissory notes, the notes containing a waiver-of-homestead clause. Bowers, subsequently to the giving of the notes, was adjudged a bankrupt in the United States district court and the bankruptcy proceeding is pending before the referee in bankruptcy. Bowers is claiming an exemption in specifics and cash to the value of $1600. The plaintiff is without remedy at law, because of the pendency of the bankruptcy matter. On March 1, 1922, Bowers executed and delivered to plaintiff twenty homestead-waiver notes, and in each

note Bowers transferred and assigned to plaintiff a sufficient amount of the property or money claimed as exempt by him in the bankruptcy court to pay the amount due plaintiff. After the general waiver there appears the following in each of the notes: "For and in consideration of the sum of $1.00, and the further consideration of renewing our admitted indebtedness to the payee of this note, I, or we, jointly and severally transfer, assign, and convey to the owner of this note a sufficient amount of my, or our, homestead and exemption to pay this note in full, principal and interest, attorneys' fees and costs. I, or we, hereby request and direct the trustee to deliver to the owner of this note a sufficient amount of property or money claimed as exempt to pay off the amount so allowed on this debt." The prayers of the petition were for injunction, and for the appointment of a receiver to obtain possession of the property and funds claimed by the bankrupt as exempt, "in order that the said property and funds may be by judgment ordered and decreed by this court subjected to your petitioner's waiver homestead notes, in which notes the said property was transferred and assigned to your petitioner."

The defendant filed an answer to the petition, denying that he intended to convey, or did convey, by the notes to the plaintiff his homestead and exemption. He averred that at the time of the execution of the notes he did not have any property "exempted to him;" that he never claimed any exemption, and that none had ever been set aside to him; that no trustee had ever been appointed for him and his estate; that that portion of the notes which purports to sell and convey unto the plaintiff exempt property was never read or known at the time of the signing by the defendant, "and that the portion of the note purporting to convey to plaintiff the exempt property of the defendant is without consideration, unreasonable, unjust, unconscionable, and unenforceable in the courts of this State;" that the defendant as a bankrupt applied to the bankruptcy court for an allowance of his exemption before he was served with any notice of this suit, and before it was instituted defendant did, for a valuable consideration, sell and assign to S. E. Vandiver all the property and rights of the defendant in and to the exempt property; which conveyance was bona fide; and that Vandiver is now the owner of all the property. Defendant denies that the plaintiff is entitled in law and equi-

ty to have a receiver appointed, or to have the defendant enjoined from further assigning and transferring or in any way dealing with the exempt property. He prays that the petition be dismissed.

S. E. Vandiver intervened and averred that he did purchase of the defendant all the items and articles claimed by the bankrupt as exempted to him under the laws of the State of Georgia prior to the filing of the present suit; that the attempted conveyance to Saul of the exemptions by the defendant is null and void and unenforceable in the courts of this State or in the courts of the United States, upon several grounds, one of which is that at the time the notes were executed by the bankrupt he had no " exempted property " of any kind, and that there was not in existence any property such as described therein, and upon which the notes could operate.

On the trial of the case a letter was introduced in evidence by the plaintiff, dated March 4, 1922, written by R. L. J. & S. J. Smith Jr., to J. F. Bowers, Canon, Georgia, in the matter of J. Saul & 'Co. v. J. F. Bowers, reciting the facts by which they had arrived at the amount due by Bowers to J. Saul & Co., and stating that they had prepared notes for that amount, being the same notes sued on and attached as exhibits to plaintiff's petition. The letter states: " Frankly, we have specific instructions to file suit against you. We are stretching a point in giving you this additional time. Before you sign these notes we must advise that we will be compelled to insist that the notes be met promptly at maturity. You will gain nothing by closing this matter unless you meet these notes." Attention is called in the letter to the fact that the notes are serial notes, and that the failure to pay any one of the notes at maturity would mature the entire series, stating that if the defendant did not sign the notes suit would be filed to the March term of the superior court. Mr. Bowers was also requested to sign the carbon copy of the letter and return it at once. The carbon copy of the letter signed by J. F. Bowers bears this endorsement; " Canon, Ga., 3-22. Above letter read and understood." No other evidence was introduced except the original notes, copies of which are attached to the plaintiff's petition. The trial judge denied the interlocutory injunction and dissolved the temporary restraining order. To this judgment the plaintiff excepted.                                           ..

*R. L. J. & S. J. Smith Jr.,* and *Little, Powell, Smith & Gold-stein,* and *Z. B. Rogers,* for plaintiff.

HILL, J. (After stating the foregoing facts.)

1. The controlling question in this case is whether or not the clause in the notes given by the defendant, Bowers, purporting to convey the "homestead and exemption" to J. Saul & Co., and set out in the foregoing statement of facts, is sufficient to vest the title to the exemption in J. Saul & Co. It is contended by S. E. Vandiver that the transfer to him after the setting aside of the exemption by the referee in bankruptcy to Bowers on May 3, 1922, which was subsequent to the transfer to J. Saul & Co., was a valid transfer. It was in the following language: "I, J. F. Bowers, for and in consideration of $1,400.00, the receipt whereof is hereby acknowledged, have this day bargained, sold, transferred, and assigned unto S. E. Vandiver, all my right, title, and interest in and to my homestead and exemptions, and the articles named therein, to wit [naming specifically the articles set aside], the same being the property claimed by me as exempt under the laws of the State of Georgia, in that certain bankruptcy proceedings wherein I have been adjudged a bankrupt." The contest, therefore, is between Vandiver, the last assignee, and J. Saul & Co., the assignee in the first assignment.

It is settled in this State that the title to an exemption set apart to a bankrupt by a court of bankruptcy is in the bankrupt, and can be alienated and sold by him. *Pincus* v. *Meinhard,* 139 *Ga.* 365 (2), 373 (77 S. E. 82). When an exemption is set apart to a bankrupt by the referee in bankruptcy, the title remains in the bankrupt precisely as it was before. *Broach* v. *Powell,* 79 *Ga.* 79, 81, 82 (3 S. E. 763). And see, to the same effect, cases cited in the *Pincus* case, supra, *Taylor* v. *Williams,* 139 *Ga.* 581 (77 S. E. 386); *Strickland Hardware Co.* v. *Fletcher,* 152 *Ga.* 445 (110 S. E. 229). If, therefore, the title remains in the bankrupt after the setting aside of the exemption by the referee in bankruptcy, so that the bankrupt can assign it, it follows that the title was in the bankrupt before the exemption was so set aside. The question then resolves itself to this: was the assignment of the homestead and exemption, made prior to the time the exemption, was set aside by the referee in bankruptcy, such a bare contingency or possibility that it can not be the subject of transfer

and sale, under the Civil Code (1910), § 4117? That section declares that "A bare contingency or possibility can not be the subject of sale, unless there exists a present right in the person selling, to a future benefit." In the case of *Tribble* v. *Anderson,* 63 *Ga.* 31, 54, Judge Bleckley said: "As to the waiver of homestead which the instrument contains, that is not needed by Anderson for his protection if the debt was untainted, or if being tainted it was purged. If he is in a situation to need it, he can take no benefit from it; for while the waiver of homestead is not a conveyance, it is enough in the nature of a quitclaim title to be subject to the general rule ordained by statute against passing any kind of title to property for a usurious purpose or as part of a usurious contract. The homestead right is a right in property, and to waive it in favor of a creditor is substantially the same thing as to convey it away — the same, certainly in respect to putting the debtor in the power of the creditor."

And in *Broach* v. *Powell,* supra, it was held: "An express waiver of homestead in mortgaged premises, contained in a mortgage deed, is a renunciation of the homestead right, whether the right could be asserted at the time of executing the deed or not. Hence, such a waiver by a single man will bar his claim of homestead when he afterwards marries." In delivering the opinion of the court in the *Broach* case, the same learned judge said this: "That the waiver of a homestead bears some analogy to a quitclaim is true: *Tribble* v. *Anderson,* 63 *Ga.* 54, 55; but is there any reason why there may not be a valid quitclaim, renunciation, or relinquishment of a contingent, the same as of a vested, interest? If it be that a quitclaim can operate only where some estate is in esse at the time it is executed, then there certainly can be no quitclaim to a homestead by waiver at all; for before the homestead is allowed the homestead estate is not in being, and after it is allowed there can be no waiver. The moment the homestead right becomes a complete vested right, it is no longer waivable, for nothing will vest it short of securing the homestead. *Harris* v. *Glenn,* 56 *Ga.* 94. Up to that stage the right, no matter how perfect the conditions for its exercise may be, is a mere grace or privilege, and it may be purged or renounced as well under incomplete conditions as under complete ones. Were this not so, a general waiver of homestead under the constitution of 1877 would be effectual only when

made by heads of families, etc., and only as to property owned by them at the time of making the waiver. The creditors of unmarried men would be at the mercy of the matrimonial instinct, and all creditors would have to take the hazard of being excluded by a claim of homestead from resorting for payment to the future acquisitions of their debtors. For, to complete the conditions for asserting a homestead right, property is no less necessary than family; and if waiver could not anticipate the acquisition of a family, neither could it anticipate the acquisition of property. We were pressed in the argument with the case of *Benedict* v. *Webb*, 57 *Ga.* 348, but that case has no application to the question. True, there was a future marriage and from that marriage the court said there resulted a new homestead right, a right other than the one that had been set up and allowed in the previous proceeding. But why did the new right result from the second marriage? Simply because there had been no waiver of homestead whatever. If there had been, as there is in the present case, a waiver of ' all right to homestead,' the decision ought to have been, and doubtless would have been, directly the reverse of what it was. An express waiver of homestead in mortgaged premises, contained in the mortgage deed, is a renunciation of the homestead right, whether the right could be asserted at the time of executing the deed or not. Hence, such a waiver by a single man will bar his claim of homestead when he afterwards marries."

In the case of *Strickland Hardware Co.* v. *Fletcher*, supra, this court held that " A voluntary bankrupt has an assignable interest in the property claimed by him in his petition as exempt under the constitution and homestead laws of this State; and he may assign the property in good faith to an existing creditor before the property is set apart by the trustee in bankruptcy, and therefore before the exemption is confirmed by the referee in bankruptcy." In delivering the opinion of the court Mr. Justice George said: " It is true that the bankrupt might have withdrawn his claim to the property, and his right to have the property set apart as exempt might have been defeated in certain circumstances by his creditors; but we can not admit that the bankrupt's interest in the property claimed by him as exempt under the constitution and laws of this State, prior to the setting aside of the property by the bankruptcy court, is a bare contingency or possibility which

can not be the subject of a sale under the Civil Code of 1910, § 4117. The title of the bankrupt in the property is more nearly analogous to a defeasible title. He may by his own act divest himself of title; or his right to have the property set apart by the bankruptcy court may, in certain circumstances, be defeated. As we have seen, however, the bankrupt prayed that certain property be set apart to him as exempt, and the property was set apart to the bankrupt as prayed. In these circumstances a court of equity will give effect to the assignments, unless fraudulent as against creditors."

Even if it be conceded that at the time of the transfer by Bowers to Saul & Co. in the notes, Bowers had no such title and interest in the homestead and exemption that he could convey, when he subsequently did acquire such interest and title by the setting aside of the exemption by the referee in bankruptcy, it would inure to the benefit of Saul & Co. In *Martin* v. *S. A. L. Ry.*, 139 *Ga.* 807 (77 S. E. 1060), where a strip of land was conveyed, extending each side of and at right angles to the center of the track or road-bed of said line, as the same may be located and established by the party of the second part, upon and over any and all lands of the party of the first part, situated in the county aforesaid [Gwinnett] and in the corporate limits of the town of Lawrenceville, and, in case of high banks or deep cuts, such additional width as may be necessary, etc., this court held that "The description of the land referred to in the deed set forth in the statement of facts was indefinite until the grantee located its road-bed through the lands of the grantor in the town of Lawrenceville. As soon as that was done, the description became definite, and applied to a strip of land of only such width as was then occupied by the railroad bed and cuts and fills." So, in the instant case, when the exemption was set aside by the referee in bankruptcy, the description of the property became definite.

A general waiver of a homestead is sufficient as a waiver (Civil Code (1910), § 3413); and if a general waiver of a homestead is good, we see no good reason why the transfer or assignment of a homestead is not good. But here the assignor expressly transfers, assigns, and conveys " to the owner of this note a sufficient amount of my . . homestead and exemption to pay this note in full, principal and interest, attorneys fees and costs.

I, or we, hereby request and direct the trustee to deliver to the owner of this note a sufficient amount of property or money claimed as exempt to pay off the amount so allowed on this debt." We are of the opinion that this assignment is not a bare contingency or possibility, but that the assignor is conveying what the law makes certain, and that is $1600 of his property under the constitutional homestead, or certain specified property which is named in the statutory homestead. It will be observed, moreover, that the bankruptcy proceedings took place within a few weeks after this first transfer; and while the Vandiver transfer does assign certain specified property, the first transfer conveys a sufficient amount of the homestead and exemption to pay the note in full, and the maxim of the law, id certum est quod certum reddi protest, applies, that is certain which can be rendered certain; and it can be easily ascertained what homestead property is, or may be, set aside to the applicant for homestead or exemption. Besides what has been said above, it does not appear that the debt, if any, owing by Bowers to Vandiver was based on a note with waiver of homestead, or whether it was upon an open account; and as against this debt we are of the opinion that the waiver of homestead, together with the transfer of whatever homestead or exemption right Bowers had at the time of the execution of the Saul note, is superior to the sale of the exemption set aside subsequently by the referee in bankruptcy. It will be observed that the contest here is not between two creditors with waiver-of-homestead notes, but between a creditor of the bankrupt holding homestead-waiver notes and the transfer of the homestead property, and an assignee of the exemption set apart by the referee in bankruptcy. The purpose of the law in authorizing a debtor to waive his right to homestead and exemption was to give his creditor the right to collect his debt as against that homestead; but if the second assignee in the present case, who has no waiver of homestead, so far as the record discloses, should prevail over the first assignee, the effect of such holding would be to say that the waiver of the homestead by the debtor and also the transfer of his homestead rights would defeat the creditor who has guarded against just such a contingency as the present by taking a waiver-of-homestead note and also a transfer of the homestead rights of the debtor. Furthermore, it does not appear from the

record that Vandiver is a creditor at all, but merely a purchaser of the exemption which had been previously transferred to J. Saul & Co. Both the plaintiff and defendant in error argued the case here on the sole issue as to whether the transfer in the Saul notes is valid. As stated in a brief offered for defendant in error, " the sole and novel question is whether or not the above-stated clause in the notes payable to J. Saul & Co. has any legal effect, so as to vest title to the exempt property in the assignee, the said J. Saul & Co. If so, it is conceded that J. Saul & Co. are entitled to have the exempt property applied to their indebtedness." The trial judge held that the clause in the notes, which sought to transfer the homestead and exemption of the debtor to J. Saul & Co., was invalid and without legal effect; but to this conclusion we can not agree, and we are of the opinion that the clause in the note referred to above was valid and sufficient to convey the property in controversy to J. Saul & Co.; and therefore the trial judge erred in refusing the injunction prayed for.

*Judgment reversed. All the Justices concur, except Beck, P. J., dissenting.*