In re LITTLE.

(District Court, N. D. Iowa, C. D. May 13, 1901.)

1. BANKRUPTCY—JURISDICTION OF COURT—EXEMPT PROPERTY.

Where a trustee has set apart property to the bankrupt as exempt, and his action has been approved, and the bankrupt has taken possession, such property passes out of the jurisdiction of the court of bankruptcy, which cannot thereafter entertain proceedings to subject the same to liens or to adjudicate the rights of claimants thereto.

2. SAME—SECURED CREDITORS—RIGHT TO SHARE IN GENERAL ASSETS.

A creditor who holds security cannot receive dividends from the bankrupt estate, except on the unpaid balance of his claim after the value of the security has been deducted, as provided by Bankr. Act 1898, § 57h; and his rights are not affected by the fact that the property on which he holds a lien is set apart to the bankrupt as exempt, nor can they be enlarged as against other creditors by an order made by the referee, by consent of the secured creditor and the bankrupt, before the exempt property was set apart, that the creditor should prove his entire claim against the estate and enforce his lien only for the balance remaining unpaid.

3. SAME—VENDOR'S LIEN—RIGHT TO WAIVE.

Creditors whose claims represent a portion of the price of property sold to the bankrupt, and which has been set apart to him as exempt, cannot be compelled by other creditors to assert a vendor's lien on such property, but may, at their option, prove their claims as unsecured creditors.

4. SAME—JURISDICTION OF COURT—COLLATERAL ISSUES.

Where a creditor holding a chattel mortgage proved its claim as an unsecured debt, expressly waiving any claim to preference as against other creditors, because of its failure to record the mortgage until after the bankruptcy, but asserted the validity of its lien as against property which had been previously set apart to the bankrupt as exempt, and its claim as a general creditor is allowed, the question of the validity of the mortgage is one which is not in issue before the court of bankruptcy, and which it is not the province of such court to determine.

5. SAME—SECURED CREDITOR—AMOUNT PROVABLE.

Where a creditor claims a lien upon property which has been set apart to the bankrupt as exempt, the value of such property must be ascertained as provided by Bankr. Act 1898, § 57h, and deducted from the amount of the claim, to ascertain the amount provable against the general estate.

6. SAME—SET-OFF—MUTUAL DEBTS.

A bank which is a creditor of a bankrupt, who also had a sum on deposit to his credit at the date of bankruptcy, is entitled to apply the same on its claim as a set-off, under Bankr. Act 1898, § 68.

7. SAME—PREFERENCES—COLLECTION FROM COLLATERAL.

Where notes which had been given by a bankrupt were secured by collateral pledged at the time the debt was created, the holder of such notes cannot be required to surrender sums collected from such collateral as preferences before proving his claim for the unpaid balance due on the notes.

In Bankruptcy. On exceptions to rulings of referee.

John M. Hemingway and J. Y. Luke, for creditors.

F. A. Harriman and H. C. Liggett, for trustee and bankrupt.

SHIRAS, District Judge. From the record certified up in this case it appears that prior to August, 1899, the bankrupt, Dan. E. Little, was in partnership with J. W. Bailey in the furniture business,

and that on the 9th day of August he bought out his partner for the sum of $2,000, and thereafter conducted the business in his own name, until he filed his petition in bankruptcy on the 7th day of February, 1901. It further appears that, prior to the conclusion of the purchase of his partner's interest, the bankrupt, Little, arranged for a loan of $1,500 from the Farmers' & Merchants' Bank of Hampton, Iowa, which sum, upon the completion of the contract purchase, was paid to J. W. Bailey by the bank upon a check drawn on the bank by the bankrupt. To secure this loan the bankrupt on the 9th day of August, 1899, executed a written agreement with the bank whereby, in effect, he mortgaged the stock in trade to the bank to secure the loan; it being therein recited that:

"The party of the first part hereby sells, conveys, and assigns unto the party of the second part all his right, title, and interest in and to the stock of furniture, fixtures, hearse, coffins, and all other property appertaining to and belonging to the furniture business of the firm of Bailey & Little, this day sold unto said Little, and the said $1,500 furnished by said bank is a part of the purchase money thereof."

This instrument now has appended thereto an acknowledgment in due form, certified to by J. A. Myers, a notary public. It is shown by the testimony of the notary that the acknowledgment was not in fact written out and signed by him until the day before the mortgage was filed for record in the office of the recorder of Franklin county, which was on the 9th day of February, 1901; and it is a disputed question of fact whether in truth the bankrupt, at the time of the execution of the mortgage, did acknowledge the instrument to be his voluntary act. It further appears that J. W. Bailey was appointed trustee of the estate, and on the 28th day of February, 1901, the trustee set apart as property exempt to the bankrupt a hearse, two horses, and other articles used in the business of an undertaker, together with some household goods and wearing apparel; and on the same day this action of the trustee was approved by the referee. It also appears that on the 25th day of February, 1901, J. E. Coonley filed a claim against the bankrupt estate, in which it is recited that the bankrupt was indebted to him in the sum of $150, being the balance of the purchase price of two horses sold to the bankrupt on December 12, 1900, for which the bankrupt executed his note payable August 12, 1901, and also executed a written agreement or contract wherein, after stating the fact of the purchase of the horses for $250, the payment of $100, and the execution of a promissory note for $150, it is provided that:

"It is distinctly understood that the ownership of said span of black mares does not pass from the party of the first part until party of the second part has paid the said note of $150 in full; and, further, party of the first part shall be entitled to take possession of said mares, if party of second part defaults in payment of the said note."

The claimant therefore asked that his claim be adjudged to be prior and superior upon said horses, as against all other creditors, and that the property be ordered to be sold to satisfy the claim, and any balance left unpaid by such sale be declared to be a general debt against the estate. Before action was taken on this claim the trustee set apart the exempt property as already stated, which action

was approved by the referee on February 28, 1901. On the 6th day of March following the bankrupt filed with the referee a paper wherein he recited the facts connected with the Coonley claim, averred the setting apart of the horses to him as exempt property, and then prayed that the creditor be first compelled to exhaust his remedy against the general assets of the estate, and to apply upon the payment of his claim his pro rata share of the general assets, and that the horses, as exempt property, be held by the bankrupt subject to the payment of any balance which may remain unpaid on the claim after applying thereto the dividend received from the general · assets. Based upon this application, the referee made the following order under date of March 6, 1901:

"Ordered by the court that the foregoing motion be, and the same is hereby, sustained by consent of both parties."

On the 12th day of March, 1901, the Farmers' & Merchants' Bank of Hampton, Iowa, filed with the referee a statement of claims against the bankrupt, which included the note for $1,500, given by the bankrupt at the time of the purchase by him of the interest of his partner, J. W. Bailey, in the furniture business, and which was secured by a mortgage on the stock as hereinbefore stated. After reciting the facts connected with this indebtedness, it is then stated that:

"It is further alleged that the contract above set out was not recorded prior to the time said Little filed his petition in bankruptcy in this case, and no preference is claimed by virtue of said contract upon property which is subject to the claims of the general creditors; but claimant alleges that the hearse and tools and other property set off to said bankrupt, so far as the same constituted property appertaining to the bankrupt's business, are not subject to the debts of the general creditors; but claimant alleges that by virtue of the foregoing contract he is entitled to have said goods applied to the payment of the foregoing claim."

It is further averred in the proof of debt filed on behalf of the bank that, when the bankrupt purchased the interest of his partner, Bailey, in part payment therefor he executed his two promissory notes for $300 each, payable to J. W. Bailey, and secured the same by assigning in writing the book accounts of the late firm of Bailey & Little to said Bailey; that the bank purchased these notes of the payee, Bailey, and has received part of the accounts assigned as collateral security therefor, amounting to $269.65, out of which the bank has collected the sum of $40.05; that one of these notes, not being paid at maturity, was renewed by a note for $300, dated November 30, 1900, payable April 15, 1901, to O. F. Myers, cashier; that this last-named note is wholly unpaid; that payments have been made on the other note for $300, leaving due thereon a balance of $25.50, and that when Little filed his petition in bankruptcy there was to his credit in the bank the sum of $51.83, which he is entitled to set off against the amount due on his notes. Based upon these facts, the bank prayed that the hearse, tools, and other undertaking implements set off as exempt be declared subject to claimant's lien; that the same be sold, and the proceeds be applied upon the claims of the bank; and that upon any balance of claim left unpaid claim·· ant be held entitled to share with the general creditors in the dividend to be paid.

On the 16th of March, 1901, the bank filed with the referee a paper wherein was recited the order made by the referee approving the action of the trustee in setting apart to the bankrupt the exempt property, and the order allowing the Coonley claim as a general claim against the estate, and averring that the same had been made without notice to claimant, and further charging that the horses, the lowering device, and other articles set apart as exempt had all been purchased within the four months next preceding the filing of the petition in bankruptcy, and that the claims of Coonley, the National Burial Device Company, and the Iowa Coffin Company, which had been allowed as general claims, were for the unpaid portions of the purchase price of these articles set apart as exempt. It was therefore asked that the orders touching these claims be set aside; that these several articles be sold separately, and the proceeds be applied to the payment of the sums remaining due as part of the purchase price; and that the named creditors be permitted to share in the general dividend to be made only upon the balance left due after applying the proceeds realized from the sale of the named articles. The bankrupt and the trustee filed objections to the claim of the bank, and to granting the relief asked in the motion last recited, on several grounds,—it being averred that the bank had waived the contract or mortgage lien on the stock of goods, thereby waiving any lien upon the exempt property; that under the facts of the case the bank could not assert a vendor's lien upon any part of the property; that the contract or mortgage executed to the bank on the 9th day of August 1899, had been fraudulently altered in a material matter by placing thereon an acknowledgment of the instrument, without the knowledge, or consent of the bankrupt; that the bank, as the transferee of J. W. Bailey, could not assert a vendor's lien as security for the two notes of $300 each, executed by the bankrupt to Bailey; and that the court had not the power or authority to subject the property set apart as exempt by the trustee with the approval of the referee to the payment of any special liens existing thereon.

Upon the issues thus created and presented the case came on for hearing before the referee, who, having heard the evidence and argument of counsel, ruled that the court of bankruptcy had not jurisdiction to subject the exempt property to the claims set up by the bank; that the payments received by the bank within the four months preceding the filing of the petition in bankruptcy constitute a preference, and must be surrendered as a condition to the allowance of the claim of the bank; that the payments so received cannot be set off against the debts due from the bankrupt to the bank; that the bank cannot set up or ask the enforcement of the vendor's lien alleged to exist in favor of the National Burial Device Company and the Iowa Coffin Company; that the contract or mortgage executed by the bankrupt on the 9th day of August, 1899, had been rendered invalid as against both the creditors and the bankrupt by the unauthorized placing thereon of the acknowledgment now found thereon; that this contract is not a purchase-money contract; and that the order setting aside the exempt property and that allowing the Coonley claims should not be set aside. To these rulings the bank excepted, and

duly filed a petition asking a review by this court of the findings and judgment of the referee, and the case has been heard upon the record certified up by the referee, which includes the evidence upon which the case was heard by him.

The first question presented for review is upon the ruling of the referee that the court was without jurisdiction to subject the property set apart as exempt to the bankrupt to the vendors' liens alleged to exist for the unpaid portions of the purchase money upon the hearse, the horses, and other articles connected with the business of an undertaker carried on by the bankrupt. The counsel for the claimant bank have cited a number of decisions by the district courts of the United States in which it has been held that a court of bankruptcy can entertain jurisdiction over property claimed to be exempt; and doubtless in many, if not in all, of these cases, the circumstances were such that jurisdiction could be rightfully exercised; but it does not follow that such jurisdiction exists or should be exercised in every case, regardless of the questions involved, or the mode in which they are presented, or the actual situation of the property at the time the jurisdiction of the court in bankruptcy is invoked. Thus, in cases wherein the property of the bankrupt comes into the actual possession or control of the court through a receiver or trustee, the court can entertain jurisdiction over all proceedings brought to settle rights in or to the property in its possession; and, if third parties should assert a right to specific property and the bankrupt should claim the same as exempt, no reason exists why the court might not hear and decide the issues thus presented, although the court might, if deemed best, order the property to be set aside as exempt, leaving the lien claimant free to assert his right in any court of competent jurisdiction. So in other cases the exemption right of the bankrupt may extend to only a part in value of the property; for in many states the homestead right, as well as other exemption rights, is limited to a certain amount in value, and the trustee, representing the creditors, is entitled to the excess over and above the sum fixed by the exemption statute, and in such cases the court in bankruptcy, having the estate in possession, may well entertain jurisdiction over proceedings brought to settle the rights of the parties in property, part of which is claimed as exempt by the bankrupt and part is claimed by the trustee in the interest of the creditors. In all such cases the court of bankruptcy, being in possession and control of the specific property, can exercise jurisdiction over the same, and through that possession and consequent jurisdiction may hear and determine questions submitted which affect the disposition of the property; but, after the court has in fact yielded up the possession of particular property, then the right to take jurisdiction over the property, or to hear and determine questions affecting the same in proceedings brought by third parties, cannot be based upon the actual possession of the property, but must be shown to exist by reason of the existence of some other recognized ground of jurisdiction.

In the case now under consideration, as already stated, the trustee set apart to the bankrupt certain property as exempt, and this action was approved by the referee. This property, being thus separated

from the body of the estate under the control of the court, passed into the actual possession of the bankrupt. Some days thereafter the bank filed an application asking the court to order the exempt property to be sold for the reasons hereinbefore set forth. It will be noticed that it is not claimed by the bank that the property was not properly set apart as exempt under the statutes of Iowa; but the ground taken is that the court of bankruptcy should not have set apart the exemptions without first enforcing against the same the vendors' liens alleged to exist in favor of the bank, the National Burial Device Company, and the Iowa Coffin Company; and in effect what is now asked is that the court will reassert its jurisdiction over the property for the purpose of subjecting the same to the liens that it is asserted exist thereon in favor of the parties just named.

Under the provisions of the eleventh clause of section 47 of the bankrupt act, the trustee was charged with the duty of setting apart the exemptions to which the bankrupt was entitled; and under the rule adopted by this court the referee had the power to determine all claims of the bankrupt to exemptions as provided for in the eleventh clause of section 2 of the act. By the action of the trustee, confirmed by the referee, the exemptions claimed by the bankrupt were allowed, and the particular property was set apart to him, and passed into his possession and control. When thus separated from the general estate, the exempt property ceased to be in the possession of the trustee or of the court, and under the provisions of section 70 the trustee took no title thereto. Under these circumstances the referee rightly ruled that the court of bankruptcy would not entertain jurisdiction over the exempt property at the request of the claimant bank. When the application on behalf of the bank was filed, the exempt property had passed from the possession of the court in bankruptcy. The trustee had no title thereto, and the creditors at large had no equity therein. Under similar circumstances in the case of In re Hatch (D. C.) 102 Fed. 280, I held that the court in bankruptcy would not take jurisdiction over property set apart to the bankrupt on the petition of a mortgagee, who wished to assert his right to subject the property to the payment of the mortgage lien. The same ruling was made by Judge Rogers in the case of In re Wells (D. C.) 105 Fed. 762, wherein he cites the rulings made under the act of 1867, and, among others, quotes from the opinion of Mr. Justice Bradley in Re Bass, 3 Woods, 382, 2 Fed. Cas. 1004, wherein it is said:

"In other words, it is made as clear as anything can be that such exempted property constitutes no part of the assets in bankruptcy. The agreement of the bankrupt in any particular case to waive the right to the exemption makes no difference. He may owe other debts, in regard to which no such agreement has been made. But whether so or not it is not for the bankrupt court to inquire. The exemption is created by the state law, and the assignee acquires no title to the exempt property. If the creditor has a claim against it, he may prosecute that claim in a court which has jurisdiction over the property, which the bankrupt court has not."

See, also, Rix v. Bank, 2 Dill. 367, Fed. Cas. No. 11,869; In re Poleman, 5 Biss. 526, Fed. Cas. No. 11,247; In re Camp (D. C.) 91 Fed. 745.

When property claimed to be exempt under the provisions of the law of the state is set apart by the trustee and referee, and delivered to the bankrupt, it passes without the control of the court in bankruptcy, and parties who claim liens thereon by way of contract, mortgage, or as vendors must assert their rights in a court other than the court in bankruptcy. The act of setting apart the property as exempt does not release the same from liens which are enforceable against it under the provisions of the state statutes. Setting it apart as exempt property declares that the trustee has no right in or title thereto under the provisions of the bankrupt act, but in no sense is it an adjudication of the rights of third parties claiming liens thereon by way of mortgages or the like; and all courts, other than the court in bankruptcy, are at liberty to hear and determine rights to such exempt property, the same as though no proceedings in bankruptcy had been instituted. It is therefore open to the claimant bank to assert in the state court its rights to the property set apart as exempt; but it cannot do so in the court of bankruptcy, and the ruling of the referee to that effect is affirmed.

The next question for consideration is that presented by the ruling of the referee with respect to the claim of Coonley. It will be remembered that the creditor, Coonley, filed his claim before the referee, asserting a contract lien on the two horses before the same were set apart as exempt; and subsequently, by consent between the bankrupt and the creditor, an order was entered by the referee to the effect that the claim of the creditor, Coonley, should share in the general dividend, and only the balance left unpaid should be enforced as a special lien on the exempt property. From the facts shown on the record, it appears that Coonley held security upon the horses for the unpaid portion of the purchase price, and therefore, under the provisions of clause "h" of section 57 of the bankrupt act, he is only entitled to a dividend upon the amount of his claim after deducting the value of his security, to be ascertained as provided for in such clause. The fact that the bankrupt and the creditor agreed to a different disposition of the matter cannot defeat the right of other creditors to insist that the claims, being secured, can be proved only as provided for in section 57; and the fact that the property was set aside as exempt does not release it from the special lien existing against it. The exception to this ruling of the referee is therefore sustained.

With respect to the claims proved by the National Burial Device Company and the Iowa Coffin Company, it is averred by the claimant bank that the sums due them are portions of the purchase price of part of the property set apart as exempt; and it is urged in argument that these claims should be treated as secured, although these creditors are not asserting any vendors' liens against the property. By proving their claims as unsecured, these creditors show that they do not claim a special lien upon the exempt property; and there is nothing in the evidence which would justify the court in holding that they must assume the risk of establishing their right to a vendor's lien before they are permitted to prove their claims as unsecured creditors. The ruling of the referee on this question is therefore affirmed.

If I correctly understand the position of the claimant bank, a lien upon the stock of goods owned by the bankrupt, in the nature of a vendor's lien, is asserted in favor of the $1,500 loaned by the bank to the bankrupt and applied in part payment of the purchase price coming to J. W. Bailey for the sale of his interest in the firm property to the bankrupt. As the bank, at the time this loan was made, took security in the nature of a mortgage on the property, its rights are to be measured by the written instrument then executed. This mortgage was not recorded until after the petition in bankruptcy was filed, and in the claim filed by the bank with the referee it was expressly stated that by reason of the failure to file the same for record—

"No preference is claimed by virtue of said contract upon property which is subject to the claims of the general creditors; but claimant alleges that the hearse and tools and other property set off to said bankrupt, so far as the same constituted property appertaining to the bankrupt's business, are not subject to the debts of the general creditors; but claimant alleges that by virtue of the foregoing contract he is entitled to have said goods applied to the payment of his foregoing claim."

It is thus made clear that the bank expressly waives any claim to a lien upon the property remaining in the hands of the trustee, and limits the lien asserted, considered either as a mortgage or purchase-money lien, to the goods set apart as exempt. The referee having correctly ruled that the exempt property had passed without the jurisdiction of the court of bankruptcy, it was made to appear that the question of the validity of the mortgage was not involved in any issue left pending in the court of bankruptcy. The claimant bank had expressly declared that it asserted no lien against the assets in the hands of the trustee, in which the general creditors were interested; and when the referee ruled, and rightly ruled, that the court of bankruptcy would not entertain jurisdiction over the exempt property, the question of the validity of the mortgage ceased to be an issue in the case. The referee held that appending to the mortgage an acknowledgment was a material and unauthorized alteration thereof, rendering the same wholly void, but further held that the debt secured by the mortgage was not thereby rendered nonenforceable, but that the same might be proved up and allowed as an unsecured debt. This latter holding is in accordance with the ruling of the supreme court of Iowa in Cutler v. Rose, 35 Iowa, 456, and is undoubtedly in accordance with justice and equity, even though it be true that the mortgage has been rendered void for the reason stated. In view, however, of the fact that the referee held that the debt due the bank was provable, but refused to take jurisdiction over the question whether the exempt property was subject to the lien of the mortgage, and as the bank expressly waived any claim to a lien upon the assets in the hands of the trustee by virtue of the mortgage, it follows that the question of the alleged alteration of the mortgage ceased to be of any moment in the case, and, as the ruling of the referee with respect to taking jurisdiction over the property set aside as exempt results in compelling the bank to resort to the state court in case it seeks to enforce its alleged lien against the exempt property, the court of

bankruptcy should have declined to pass upon the question of the alteration of the mortgage. Under the facts shown on the record, the validity or invalidity of the mortgage does not affect the decision of any of the issues which the referee undertook to pass upon. The validity of the mortgage is a vital question, however, in case the bank should undertake to enforce a claim thereunder against any of the exempt property; but, as the referee refused to take jurisdiction over the exempt property, he should not have undertaken to pass upon the validity of the mortgage, but should have left that question to be decided by the court that may be called upon to adjudge whether the exempt property is subject to any lien in favor of the claimant bank. The holding of the referee that the mortgage held by the claimant bank has been rendered void by reason of an alleged alteration is therefore set aside, to the end that the question may be left open for consideration and determination in any proceedings hereafter instituted on behalf of the mortgagee.

The referee further held that the bank could prove up its claims, provided it accounted for certain payments received within four months next preceding the filing of the petition in bankruptcy; and the exceptions present the question whether certain sums in the hands of the bank must be paid to the trustee as a condition to the allowance of the claims of the bank. With respect to the $1,500 debt for money loaned by the bank to Little, it appears that the bank asserts that it has a lien on the hearse, which was set apart as exempt, by virtue of the mortgage executed by the bankrupt. Having security for part of its debt, the value thereof, to be ascertained according to the provisions of clause "h" of section 57 of the bankrupt act, must be deducted from the claim. It also appears that at the date of the filing of the petition in bankruptcy the bankrupt had to his credit as a depositor in the bank the sum of $51.83. The facts present a case of mutual debts between the bank and the bankrupt with respect to this deposit, and under the provisions of section 68 the bank is entitled to set this amount off against the debt due from the bankrupt, and the amount thereof will therefore be deducted from the claim due the bank.

The evidence shows that when J. W. Bailey, in August, 1899, sold out his interest in the partnership property to the bankrupt, he took in part payment two notes, of $300 each, and had assigned to him as collateral security the book accounts due the firm. Subsequently these notes were transferred by Bailey for value to the bank, and it succeeded to the rights of Bailey in the collateral assigned for the payment thereof. Under these circumstances the bank cannot be required to pay to the trustee sums collected from the collaterals as a condition to the allowance of the claim, even though such sums have been received within four months next preceding the initiation of proceedings in bankruptcy. The so-called preference was created when the collaterals were assigned in August, 1899, by the bankrupt, and not when collections were made thereon; and, furthermore, the collaterals were assigned as security for a debt then created, and not as a security for a pre-existing claim, and therefore there is no ground for holding that the bank must repay these sums

to the trustee before it can be permitted to prove up the balance due on the notes held by it. It would appear that the bank possibly holds some of the collaterals yet uncollected as security, and the value thereof, to be ascertained as provided for in section 57, should be deducted from the amount left unpaid upon these notes.

It also appears that the bank, within four months preceding the filing of the petition in bankruptcy, received payments from the bankrupt amounting to some $102, if I correctly understand the evidence; and the referee held that these payments were in the nature of preferences, and must be repaid to the trustee, and it is not shown that the facts do not sustain this ruling, which is therefore affirmed.

The clerk will certify these rulings to the referee, who will notify the parties, and the case will be proceeded with as herein directed. The costs of this proceeding will be equally divided between the claimant bank and the trustee.