## McKENNEY v. CHENEY, executor.

1. Subsection *f* of section 67 of the national bankruptcy act of 1898 is applicable to cases of both voluntary and involuntary bankruptcy.
2. Where an exemption is set apart under the State law, the trustee in bankruptcy acquires no title to the exempt property.
3. Under the national bankruptcy act, the bankrupt court is without authority or power to administer property set aside as exempt under the constitution of this State.
4. The effect of 67 *f* of the national bankruptcy act is not to avoid the levies and liens therein referred to against all the world, but only as against the trustee in bankruptcy and those claiming under him, in order that the property may pass to and be distributed among the creditors of the bankrupt.　It is applicable only as against such trustee, and was designed to prevent preferences between creditors.
5. A discharge in bankruptcy does not discharge the lien of a judgment obtained, within four months prior to the adjudication of bankruptcy, upon a note waiving the homestead exemption allowed by the laws of this State upon lands set aside by the bankrupt court as exempt.

Submitted May 6, — Decided August 12, 1903.

Affidavit of illegality.　Before Judge Gober.　Cobb superior court.　November 19, 1902.

*J. Z. Foster* and *R. N. Holland,* for plaintiff in error.

*John P. Cheney* and *D. W. Blair,* contra.

CANDLER, J.   J. N. Cheney, as executor of A. J. Cheney, deceased, obtained a judgment against McKenney in a suit upon a promissory note for $5,000, dated at Marietta, Ga., December 28; 1892, by the terms of which the maker waived all his "legal and constitutional rights, under the laws of this State, the United States, or any other State, as against this note, . . to claim any exemption of homestead or personalty or any other exemption, and to plead the same against this note or any renewal thereof." The date of this judgment was November 20, 1901. The present case arose upon an affidavit of illegality to the levy of an execution issued upon the judgment against property of McKenney. The grounds of illegality set out in the affidavit, which are material to this decision, are substantially as follows:   On November 28, 1901, eight days after the rendition of the judgment on which the execution issued, McKenney filed in the United States district court for the northern district of Georgia his voluntary petition of bankruptcy, and was on that day adjudged a bankrupt, and on March 31, 1902, he received his discharge in bankruptcy. The judgment in favor of Cheney, executor, having been rendered less than four months prior to the adjudication of bankruptcy, was, by virtue of that adjudication rendered null and void. The property levied upon was set apart by the trustees in bankruptcy to McKenney as his exemption, as provided by law. Said property was duly scheduled as exempt in the exhibit to the petition in bankruptcy, and was valued and set apart in regular course by the trustees.   Of all of this the plaintiff in execution had due notice as required by law, but he made no objection to the setting apart of the homestead.   To the portions of the affidavit above referred to the plaintiff in execution demurred, on the ground that the matters alleged do not constitute a ground of illegality; that the allegation that plaintiff's judgment became null and void by reason of the defendant's having been adjudicated a bankrupt is untrue as matter of law; that the discharge in bankruptcy did not discharge the lien of the plaintiff in execution upon properties owned at that time by McKenney and which had already been set apart as an exemption to him; and that the allegations that the plaintiff had notice of the bankruptcy proceedings and of the setting apart of a

homestead and exemption to the defendant, that the property was scheduled in the defendant's petition for bankruptcy, and that the judgment in favor of the plaintiff was included in the schedule of liabilities, are insufficient and immaterial, it not being alleged that the plaintiff proved his debt in bankruptcy against the defendant or received any dividend from the estate of the bankrupt on the execution. The demurrer also attacked the allegation in the affidavit of illegality that no objection to the setting apart of the property as an exemption for the defendant under the bankruptcy law was made by the plaintiff, although he was represented by counsel before the bankruptcy court at the time the exemption was allowed, on the ground that it is insufficient and irrelevant, it not being alleged that the plaintiff proved his debt against the defendant in the bankruptcy proceeding. This demurrer was sustained. The case proceeded to trial, and the plaintiff introduced the record of his original petition in the suit on the note above referred to, and the execution issued on the judgment rendered therein. The only evidence offered by the defendant was a certified copy of his discharge in bankruptcy, which, on objection by the plaintiff, was ruled out by the court. On motion, the judge then directed a verdict in favor of the plaintiff. To the sustaining of the demurrer, the exclusion from evidence of the certified copy of the defendant's discharge in bankruptcy, and the direction of a verdict in favor of the plaintiff, the defendant excepted.

1. There is a conflict in the authorities as to whether subsection *f* of section 67 of the national bankruptcy act applies to cases of voluntary bankruptcy. The language of the subsection referred to is as follows: "That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the *filing of a petition in bankruptcy against him*, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid. And the

court may order such conveyance as shall be necessary to carry the purposes of this section into effect: *Provided,* that nothing herein contained shall have the effect to destroy or impair the title obtained by such levy, judgment, attachment, or other lien, of a bona fide purchaser for value, who shall have acquired the same without notice or reasonable cause for inquiry." If we take the section as complete in itself, and construe it standing alone, it would seem to be only applicable to cases of involuntary bankruptcy; for it is difficult to see how a voluntary bankrupt can be said to have filed a petition "against" himself. Subsection *c* of the same section, however, is as follows: "A lien created by or obtained in or pursuant to any suit or proceeding at law or in equity, including an attachment upon mesne process or a judgment by confession, which was begun against a person within four months before the filing of a petition in bankruptcy *by or against* such person, shall be dissolved by the adjudication of such person to be a bankrupt, if (1) it appears that said lien was obtained and permitted while the defendant was insolvent and that its existence and enforcement will work a preference, or (2) the party or parties to be benefited thereby had reasonable cause to believe the defendant was insolvent and in contemplation of bankruptcy, or (3) that such lien was sought and permitted in fraud of the provisions of this act; or if the dissolution of such lien would militate against the best interests of the estate of such person, the same shall not be dissolved, but the trustee of the estate of such person, for the benefit of the estate, shall be subrogated to the rights of the holder of such lien and empowered to perfect and enforce the same in his name as trustee with like force and effect as such holder might have done had not bankruptcy proceedings intervened." It will be observed that in subsection *c* the words "by or against" are used, showing that it was the intention of Congress that its provisions should be applicable alike to voluntary and involuntary petitions in bankruptcy, while subsection *f* is, by its terms, applicable only to petitions "against" the person who becomes a bankrupt. This construction of subsection *f* obviates the necessity of holding that Congress in one section enacted provisions which it immediately afterwards repealed.

This view has been adopted by some very able judges in dealing with this question. See In re Easley, 93 Fed. 420, where Judge Paul, of the United States district court for the western district of

Virginia, says, on page 422, in discussing subsection $f$, that it "so clearly applies to a case of involuntary bankruptcy as not to admit of discussion in a case like, this, of voluntary bankruptcy."   See also In re Collins, 2 A. B. R. 1; In re DeLue, 1 A. B. R. 387: A very strong opinion in support of the view under consideration is that of Judge Thomas, of the district court of the eastern district of New York, In re O'Connor, 95 Fed. 943, where the view is expressed that to hold subsection $f$ applicable to cases of voluntary bankruptcy is to eliminate subsection $c$ from the statute, and that courts should "hesitate to construe a statute so as to deprive a substantial portion thereof of any force or office." Upon an examination of the entire act I am satisfied that a proper construction of subsection $f$ requires the holding that it is applicable to both cases of voluntary and involuntary bankruptcy.   To hold otherwise would be to do just the thing that Judge Thomas, in the case last cited, said that courts should be slow to do.   Section 1 of the act, in defining the meaning of the various terms used in the act, especially provides:   "'A person against whom a petition has been filed' shall include a person who has filed a voluntary petition." Where, as in this case, the lawmaking power has expressly declared what meaning given language shall have, there is no longer any room for construction of that language, no matter how awkwardly it may be used in the text.   The reason for the subsection is as applicable to cases of voluntary bankruptcy as to those of involuntary bankruptcy.   As respects creditors, the most important object of the act was to prevent preferences and to secure a fair and equal distribution of the assets amongst them, disregarding any action, submission, collusion, or fraud of the bankrupt.   Subsections $c$ and $f$ were evidently inserted in furtherance of this purpose, and we do not think that it was intended for a construction to be placed upon this clause which would depend for support upon the immaterial fact of the petition being filed in the one case by the bankrupt and in the other by his creditors.   If such a distinction should be drawn it would depend entirely upon the bankrupt whether creditors should be preferred or not; for if he filed the petition, a creditor who had obtained a judgment within four months would be preferred, while if he waited for creditors to file it, the one obtaining the judgment would not be preferred.   In this way preferences might be established at the option of the debtor alone, which it was

the very object of the law to prevent. It is therefore much more in harmony with the purpose of the act as evidenced by the text as a whole to hold that this section is applicable both in cases of voluntary bankruptcy and in cases of involuntary bankruptcy, than to announce the contrary doctrine. In re Richards, 95 Fed. Rep. 258, 3 A. B. R. 145; In re Hopkins, 1 A. B. R. 209; Peck Lumber Mfg. Co. *v.* Mitchell, 1 A. B. R. 701; In re Higgins, 3 A. B. R. 364; In re Vaughan, 3 A. B. R. 362; In re Rhoads, 98 Fed. 399; Brown *v.* Case, 6 A. B. R. 744; In re Benedict, 8 A. B. R. 463.

2. The present record shows that the judgment obtained by the defendant in error was rendered November 20, 1901, and that the plaintiff in error filed his petition in bankruptcy on November 28, 1901. The suit upon which the judgment was based was brought more than six months prior to the rendition of the judgment, and was on a note containing a waiver of homestead rights, dated prior to the passage of the bankruptcy act. Unquestionably, if the judgment had been obtained at any time before July 28, 1901, it would have been a lien on all the property of the bankrupt, and would have been entitled to preference over all other creditors not holding similar liens of equal dignity. Having been obtained, however, within four months of the date of the filing of the application, notwithstanding the absolute good faith of the entire transaction in its relation to all other creditors of the bankrupt and as it affected the assets in the hands of the trustee for administration, it had no lien, and was on a perfect equality with all other debts of the bankrupt which were not secured or in some way recognized by the law. The judgment being on a note which expressly waived all homestead rights, the defendant in error did not attempt to prove his debt in the bankruptcy proceedings, nor did he object to the final discharge of the bankrupt, but after the discharge levied his execution upon the lands which had been set apart. In discussing the act of 1867, Mr. Justice Bradley, In re Bass, 3 Woods, 382, said: "Not only is all property exempted by State laws, as those stood in 1871, expressly excepted from the operation of the conveyance to the assignee, but it is added in the section referred to, as if ex industria, that 'these exceptions shall operate as a limitation upon the conveyance of the property of the bankrupt to his assignee, and in no case shall the property hereby excepted pass to the assignee or the title of the bankrupt thereto

be impaired or affected by any of the provisions of this title.' In other words, it is made as clear as anything can be that such exempted property constitutes no part of the assets in bankruptcy. The agreement of the bankrupt in any particular case to waive the right to the exemption makes no difference. He may owe other debts in regard to which no agreement has been made. But whether so or not, it is not for the bankrupt court to inquire. The exemption is created by the State law, and the assignee acquires no title to the exempt property. If the creditor has a claim against it, he must prosecute that claim in a court which has jurisdiction over the property, which the bankrupt court has not." And in the recent case of Lockwood v. Bank, decided by the Supreme Court of the United States on June 1, 1903, Mr. Justice White, delivering the opinion, quoted from the Bass case, supra, and said: " The fact that the act of 1898 confers upon the court of bankruptcy authority to control exempt property in order to set it aside, and thus exclude it from the assets of the bankrupt estate to be administered, affords no just ground for holding that the court of bankruptcy must administer and distribute, as included in the assets of the estate, the very property which the act in unambigious language declares shall not pass from the bankrupt or become part of the bankruptcy assets. The two provisions of the statute must be construed together and both be given effect. Moreover, the want of power in the court of bankruptcy to administer exempt property is besides shown by the context of the act, since throughout its text exempt property is contrasted with property not exempt, the latter alone constituting assets of the bankrupt estate subject to administration. The act of 1898, instead of manifesting the purpose of Congress to adopt a different rule from that which was applied, as we have seen with reference to the act of 1867, on the contrary exhibits the intention to perpetuate the rule, since the provision of the statute to which we have referred in reason is consonant only with that hypothesis."

In the case at bar, a large property which the bankrupt owned is set apart as exempt. This property has never gone into the hands of the trustee for administration. Under the ruling in the Lockwood case, supra, it will be seen that the bankrupt court had nothing to do with this property but to set it aside under and in accordance with the provisions of the State laws. As to everything

that the plaintiff in error owned other than this property, and as to all that he might have subsequently acquired, the judgment obtained by the defendant in error would have been void if he had proved his debt in the bankrupt court and participated in the distribution of the property going into the hands of the trustee; and if he had placed himself on an equal footing with the other creditors in bankruptcy, his judgment previously obtained in the State courts would have been void as to them.   This, however, he did not see proper to do, and his judgment is not affected by the proceedings in bankruptcy.   According to the reasoning in the Lockwood case, if the defendant in error, prior to the bankruptcy proceedings, had not reduced his debt to judgment, and had proved his claim in the bankruptcy court, he could have objected to the discharge of the debtor and could have gone into the State court and obtained a judgment on his waiver note and then levied it upon the exempt property; and inasmuch as he had obtained the judgment prior to the adjudication, although within less than four months, there is no reason why, as between him and the bankrupt, this judgment should be held to be void.   To this effect is the ruling in the case of Frazee *v*. Nelson, 179 Mass. 456.   Morton, J., delivering the opinion of the court, said: "The effect of section 67 *f* of the United States bankruptcy act of 1898 is not to avoid the levies and liens therein referred to against all the world, but only as against the trustee in bankruptcy and those claiming under him, so that the property may pass to and be distributed by him among the creditors of the bankrupt."   The Federal court, as ruled in the Lockwood case, having no jurisdiction to administer the property set apart as exempt, subsection *f* of the bankruptcy act does not affect a judgment obtained in a State court on a note waiving such exemption, when such judgment is proceeding only against property set aside as exempt.   The bankrupt court having no jurisdiction over the property set aside as exempt, it can take none over specific liens upon such property, and for the same reason can take none over a judgment which has superior rights as against the property set apart.   This court, in *Evans* v. *Rounsaville*, 115 *Ga.* 684, held: "While a discharge in bankruptcy releases the bankrupt from a debt which is provable under the bankrupt act of 1898, and which is not within the excepted classes, and takes away from the creditor the right to proceed against his debtor in per-

sonam to recover that debt, yet a valid lien created on the property of the bankrupt more than four months before the filing of his petition in bankruptcy is not affected by his discharge. After discharge, a creditor holding such a lien, who has not proved his debt in bankruptcy, may proceed to enforce it against the property of the bankrupt in the State court." See also *Dozier* v. *McWhorter*, 113 *Ga.* 584, and cases therein cited.

As has been seen, section 67 *f* of the bankruptcy act is applicable only as between the trustee and the creditor, and was designed to prevent preferences between creditors. We have also seen that in the case of a creditor holding a note containing a waiver of homestead rights, if the debt was not proved in bankruptcy, the creditor, in the event of his not having obtained a judgment against the bankrupt prior to the adjudication of bankruptcy, may go into the State courts, reduce his debt to judgment, and levy the execution issued thereon upon the property set apart as a homestead prior to the discharge of the bankrupt. There is therefore no good reason why a judgment obtained on a note waiving homestead in less than four months prior to the adjudication of bankruptcy should not be allowed to proceed against property set apart after discharge. After property has been administered and sold by a bankrupt court and the proceeds applied to claims properly proved, it is safe from all claims, and a discharge settles all debts against it; but where it is not administered,—where the bankrupt court simply sets it aside under the State law providing for exemptions, it has nothing further to do with it. The bankrupt court does not stand as a warrantor, and the discharge is not good against a judgment obtained on a superior claim, and which judgment was not proved in bankruptcy and did not participate in any division of the assets of the bankrupt. This view is fully sustained by the cases of Robinson *v.* Wilson, 15 Kas. 595, and Thole *v.* Watson, 6 Mo. App. 591. In the Kansas case the court said: "As the bankrupt court gets no jurisdiction of the exempt property, it would seem that it should take none over any specific liens upon such property." The lien in that case was that of an attachment levied within four months prior to the adjudication in bankruptcy. It was held that as the homestead did not pass to the assignee in bankruptcy, the bankruptcy proceedings did not dissolve the attachment. In Thole *v.* Watson, supra, it was held

that where household furniture attached is claimed as exempt by the bankrupt, and set apart to him as exempt, it does not pass to the assignee, and is subject to the process of the State courts. To the same effect see In re Koeppler (N. D.), 75 N. W. 789.

Aside from the authorities cited, however, we think that the language of the statute affords ample warrant for the ruling here made. The section in question provides simply that the effect of the discharge of such liens as are obtained within four months prior to the filing of the petition in bankruptcy shall be to pass the property against which the lien is held "to the trustee as a part of the estate of the bankrupt." So it seems that the effect of this language is clearly to exclude liens upon property which the bankrupt court does not undertake to administer, and over which it has no jurisdiction. As fully sustaining this view, see the able opinion of Justice Young, of the Supreme Court of North Dakota, in the case of Powers Dry Goods Co. v. Nelson (N. D.), 88 N. W. 705. See also Woodruff v. Cheeves, 105 Fed. 601 ; In re Wells, 105 Fed. 762 ; In re Little, 110 Fed. 621. In the present case, the property in question had been by order duly set aside as exempt. In thus setting it aside the Federal court lost its jurisdiction over it ; and the judgment in the State court on the homestead waiver note, not having been proved in bankruptcy, was not affected by the discharge of the bankrupt. The court below, therefore, did not err in refusing to allow the order of discharge to be introduced in evidence, nor in instructing the jury to find against the illegality.

*Judgment affirmed.    By five Justices.*