## PINCUS *v.* MEINHARD & BROTHER.

1. A letter was written by a retail to a wholesale merchant, in which he ordered a specified bill of goods. Before accepting the order and shipping the goods, the latter wrote to the former, requesting a statement of his financial condition, which request was complied with. The statement contained, among other things, a waiver of homestead and exemptions. Upon receipt of this statement the wholesale merchant, partly on faith of the waiver, accepted the order and charged the bill of goods on his books to the purchaser, and commenced to manufacture and buy the goods, and within a few weeks thereafter delivered them to the purchaser. *Held,* that the waiver of homestead was made contemporaneously with the offer to buy and its acceptance, and was a valid contract of waiver.

(*a*) Whether the defendant signed the waiver, or authorized any one else to do so for him, is a question of fact for the jury on the trial of the case.

2. The title to an exemption set apart to a bankrupt by a court of bankruptcy is in the bankrupt, and can be alienated and sold by him.

(a) In such a case, a vendee who purchases from the bankrupt before the goods are set apart under the State law by the ordinary gets a good title thereto, unless the sale was made to delay or defraud the creditors of the vendor who had the right to subject the exemption, and this intention was known to the purchasers.

3. In an equitable petition to impound a certain stock of goods set apart to a bankrupt, pending a final trial of the case, on the ground that the bankrupt had fraudulently sold the goods to hinder, delay, and defraud his creditors, and also to impound the note given for the goods, it was not error to impound the goods until the final disposition of the case.

(a) In such a case it was reversible error to impound the note given for the goods, where it appeared that the payee of the note was not a party to the suit, and did not in any way waive being a party, and there was no evidence to show that the defendant was in possession of the note.

JANUARY 25, 1913.

Receivership. Before Judge Frank Park. Grady superior court. March 5, 1912.

A petition was filed by S. H. Meinhard & Brother against Max Pincus and others, to subject a certain exemption of personal property, consisting of a stock of goods, and set aside to Max Pincus, bankrupt, by the bankruptcy court, to the debt due by Pincus to Meinhard & Brother, it being alleged in the petition that the exemption so set apart was subject to the debt on account of a homestead waiver by Pincus as against the payment of the debt. The record shows substantially the following facts: About July 1, 1911, Pincus, who was a retail merchant of Doerun, ordered a certain bill of merchandise by letter from Meinhard & Brother, of Savannah, to be shipped to the former by the latter during the months of August and September thereafter. Upon receipt of this order Meinhard & Brother requested a statement of Pincus as to his financial condition, which the latter gave upon a blank sent him by the former, and which was filled out, signed by the latter, and returned to the former. In this statement the following language is found as to homestead waiver: "As a part of the within representation to H. S. Meinhard & Bro., of Savannah, Ga., and as a further basis for credit, and as a part of the terms of any sale made by them to us or me, so long as this agreement shall not have been expressly revoked by us or me, such revocation to be evidenced by a writing delivered to them, we or I, as against any indebtedness arising out of the sale and delivery to us, or me, of any goods, wares, and merchandise, by said H. S. Meinhard & Bro., based on their faith in the truth of the within statement

and on their reliance upon this waiver, hereby- severally waive and renounce for ourselves and families, or myself and family, any and all homestead or exemptions we or I may have under or by virtue of the constitution and laws of the State of Georgia, or any other State, or the United States. This waiver of homestead is hereby declared to be continuous in its character, and shall take effect and be construed to become operative contemporaneously with the creation and contract of indebtedness, whether such indebtedness be evidenced by written account or note. Dated at July 6, 1911." Immediately upon receipt of the statement from defendant to plaintiffs, they wrote to him, on July 11, 1911: "We are in receipt of yours of the 8th inst., enclosing two notes to cover the balance of your account, also statement of your finances. Will state that it is satisfactory to us, and we will ship out your fall goods. We notice, however, that this statement is signed by Max Pincus and Dan R. Parkman. Is it intended that Mr. Parkman is merely a witness to your signature, or is he to become a partner with you? Kindly let us know about this, and oblige." To this letter defendant replied on July 12th: "I am in receipt of your letter of the 11th inst., and I also wish to state to you that Mr. Parkman's name is only as a witness." On the 14th day of July, 1911, plaintiffs approved the order and entered the same upon their books for shipment at the time stated, and charged the goods to the account of defendant. Immediately thereafter plaintiffs began to purchase and manufacture the goods and merchandise which defendant had ordered to be shipped to him during the months of August and September thereafter. On August 18 plaintiffs delivered to defendant the goods ordered on July 1, 1911. On January 2, 1912, the defendant Pincus was adjudicated a bankrupt. He claimed an exemption of certain personalty consisting of a stock of merchandise, which was set apart by the trustee in bankruptcy; and this exemption was confirmed by the referee in bankruptcy on February 14, 1912, and the trustee was ordered to deliver the property so set aside to the bankrupt, which was done. On the same day the bankrupt, as he claims, sold to his brother, Morris Pincus, the stock of goods so set apart, in payment of a debt alleged to be due by Max to Morris Pincus, and delivered the exempted property to the latter on the 16th day of February, 1912. The plaintiffs did not prove their claim in bankruptcy. Max

Pincus is totally insolvent. On the same day Morris Pincus sold and delivered the same to R. H. Freeman, R. D. Cole, and J. Idleson, for the sum of $600, and they made and delivered to Max Pincus a non-negotiable note, payable in six days thereafter. A condition is incorporated in the body of the note to the effect that it shall not be paid if the title to the exempt property shall fail. At the time of the sale of the property to the above-named purchasers, they had actual knowledge that the property had been set aside and allowed as an exemption to the defendant by the court of bankruptcy. No order or authority of the superior court was granted to Max Pincus to sell the exempted property. Demand on Max Pincus and his attorney for the note, and refusal on their part to deliver it, was alleged. The prayer of the petition was that Freeman, Cole, and Idleson be enjoined and restrained from selling or otherwise disposing of the exempt property, and that the receiver appointed by the court be directed to take the property from the possession of Freeman et al., and hold the same subject to the order of the court, and, if they have sold any of the property, that they be required to file an account thereof and pay the proceeds to the receiver.

On February 19, 1912, the judge passed a temporary order restraining and enjoining Freeman, Cole, and Idleson, among other things, from selling or otherwise disposing of the exempted property, and requiring them to deliver said property to the receiver, and that the latter hold the same subject to the further order of the court. It was further ordered, that the defendant or his attorney show cause before the judge, on March 5, 1912, why they should not be attached for contempt on account of their alleged failure and refusal to deliver to W. M. Smith, the receiver, the note given to the defendant by Freeman, Cole, and Idleson; also, that Max Pincus and his attorney deliver the said promissory note to the receiver, who was to hold it subject to the further order of the court; and that Pincus, Freeman, Cole, and Idleson show cause, on March 5, 1912, "why said receiver should not retain permanent possession of said exempt property, and why the petitioners should not have a judgment in rem against said property."

In his answer the defendant specifically denied that he ever signed or executed any instrument whatever to the plaintiffs in which he waived his rights to homestead. He averred that he

could not read and write, nor keep books, and could read printing very little; that he could not read the report made to the plaintiffs as to his financial condition, and if there was a homestead-waiver clause therein, either in print or writing, it was not read to him; and that at no time before or since the signing had the plaintiff ever offered to put the defendant on notice of such clause. He denied that he ever signed any writing or printed matter containing a homestead waiver to plaintiffs, to his knowledge, and that plaintiffs ever called upon defendant to do such a thing. If such had been done, it was a fraud, because of his ignorance of the English language, which was known to plaintiffs. He never would have signed such an instrument if it had been called to his attention. He filed his voluntary petition in bankruptcy, and was adjudged a bankrupt on January 2, 1912. The trustee did set apart certain property as exempt on the 26th day of January, 1912, and the same was duly approved and set apart by the bankruptcy court. He specially denies that he was endeavoring to sell the exempted property, and alleges that, upon the delivery of the order from the referee approving the exemption, he turned to his brother, Morris Pincus, and said, "Will you take the homestead property for what I owe you, and the costs as fixed by the order and the attorney's fees?" Morris answered that he would; then Max said, "It is your property," etc. He sets out what purports to be an itemized statement of the account due Morris Pincus; that the sale was made in good faith and for the full market value of the goods, etc.

The judge granted an order appointing a temporary receiver, who was directed to hold "the homestead and exempt property set aside and allowed unto the said Max Pincus by the United States court," until the further order of the court, and requiring the bankrupt to answer at a named date, the substance of which answer is set out above. At this hearing the court passed another order covering the questions made in the ancillary and supplementary petition of Meinhard & Brother v. Max Pincus, the substance of which petition is set forth above. The order enjoined R. H. Freeman, R. D. Cole, and J. Idleson from selling and disposing of the exempt property delivered to them by the defendant, and directed that the property be delivered to the receiver; that he hold it subject to the further order of the court; and that if any of the

property had been sold by the above-named purchasers, they file with the receiver an account thereof. It was "further ordered that the said Max Pincus and his attorney, R. R. Terrell, deliver the said promissory note to the said W. M. Smith, receiver, and that said receiver hold said note subject to the further order of this court." It was "further ordered that the said Max Pincus, R. H. Freeman, R. D. Cole, and J. Idleson show cause before me at Cairo, Ga., on the 5th day of March, 1912, why said receiver should not retain permanent possession of said homestead and exempt property, and why the petitioners should not have a judgment in rem against said property." On the demand of the receiver, of R. R. Terrell, the attorney, and of Max Pincus, for the note made to Morris Pincus, by Freeman, Cole, and Idleson, both parties refused to deliver the note. The court rendered judgment "that the $600 note of Idleson, Cole & Freeman, payable to Morris Pincus, dated February 16, 1912, be turned over and delivered to the receiver, W. M. Smith, to be held for further order of court; the goods to be delivered to said Cole, Idleson & Freeman as soon as the note is delivered to said Smith." To this judgment Max Pincus excepted.

*R. R. Terrell,* for plaintiff in error.

*T. H. Parker* and *Shipp & Kline,* contra.

HILL, J. (After stating the foregoing facts.)

1. The main question in this case is, did the statement to Meinhard & Brother by Max Pincus, containing what purported to be a waiver of homestead and exemption rights, contain a valid, binding waiver as contemplated by law? It is insisted that the waiver of homestead and exemption rights was not a part of the contract upon which the defendant obtained the goods and merchandise from the plaintiffs. If the defendant signed the statement containing the waiver contemporaneously with the offer to buy, and it was done for the purpose of obtaining the goods of the plaintiffs, and they by reason of this waiver sold and delivered the goods to the defendant, then it is a good waiver, and the defendant is bound by the contract. What does the record show with reference to this? On July 1, 1911, the defendant ordered of the plaintiffs, by letter, a specified bill of goods. Before the plaintiffs would sell and deliver the goods they required a signed statement of the defendant as to his financial condition. In com-

pliance with this request, the defendant made the statement containing the clause as to homestead and exemption waiver as set out in the above statement of facts. Just two days after the date of the last letter of the defendant (it does not appear how long the letter was in transmission) with reference to the statement containing the waiver, the plaintiffs approved the order for the goods and entered the same upon their books for shipment at the time designated by the defendant, and charged the goods to the account of the latter, and they were actually delivered to him on August 18 thereafter, according to the terms of the contract. Our law declares: "The debtor shall have power to waive or renounce in writing his right to the benefit of the exemption provided for in this article, except as to wearing apparel," etc. Civil Code, § 6584. And section 3413 provides: "Any debtor may, except as to wearing apparel and three hundred dollars' worth of household and kitchen furniture and provisions, waive or renounce his right to the benefit of the exemption provided for by the Constitution and laws of this State, by a waiver, either general or specific, in writing, simply stating that he does so waive or renounce such right, which waiver may be stated in the contract of indebtedness, or contemporaneously therewith or subsequently thereto in a separate paper." But it is insisted that the present case falls within the ruling made in the case of *Ragan* v. *Taff,* 134 *Ga.* 835 (68 S. E. 579). We think the facts of this case are radically different from those in the case cited. In that case, on page 838, Mr. Justice' Evans said: "Here a retail merchant gave to a wholesale merchant a statement of his financial condition, which contained a general waiver and renunciation of his homestead rights. The retail merchant did not order the goods at the time he gave this statement, nor did the wholesale merchant contract at that time to sell him any goods. There was absolutely no privity of contract between them. The goods were sold six months thereafter on open account, and we do not think the homestead waiver in the statement prepared for credit barred the retail merchant from applying for a homestead as against debts subsequently contracted." In the present case, the credit for the identical bill of goods sold to the defendant by the plaintiffs was extended partly on the faith of the statement containing the waiver, and the goods were sold immediately after the reception of the statement containing the waiver,

and on the faith of it. They were manufactured and bought by the plaintiffs for the sole purpose, as the record discloses, of being shipped to the defendant on his order, and were charged on the books of the plaintiffs to the defendant's account. It appears, therefore, that the waiver of homestead and exemption rights was made contemporaneously with the application for the goods, and was a part of the contract upon which the defendant, Max Pincus, obtained the goods from the plaintiffs. This being true, the waiver of homestead was a valid, binding waiver by the defendant, and the exemption set apart to him by the bankruptcy court will not prevail as against the plaintiffs' debt.

But it is insisted further that the defendant did not sign the contract containing the waiver. How this is can be determined by the jury from the evidence on the final trial of the case.

2. The next inquiry is, whether the exemption consisting of the stock of goods set apart to the defendant, Max Pincus, by the trustee, and approved by the referee, vested the title to the same in him individually, so that he could alienate it. There is no question that prior to the bankruptcy proceedings the title to the goods was in Max Pincus. Did his voluntary petition in bankruptcy, and the submitting of himself and his assets, consisting wholly of the stock of goods set apart as exempt by the trustee, to the bankruptcy court, divest the title and vest it in the trustee? By subsection (a) of section 70 of the bankruptcy act of 1898 (30 Stat. 565, U. S. Comp. St. 1901, p. 3451), it is provided that "the trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, *except in so far as it is to property which is exempt,*" etc. (Italics are the writer's.) 3 Remington on Bankruptcy, Supp. 867, § 70. In the case of Lockwood *v.* Exchange Bank, 190 U. S. 294 (23 Sup. Ct. 751, 47 L. ed. 1061), it was held that "The trustee does not take title to property exempt by the law of the State, but, until the exempt property is set off, has possession." See also Collier on Bankruptcy (9th ed.), 1029, (b); *McKenney* v. *Cheney,* 118 *Ga.* 387, 392 (45 S. E. 433). But though the title to the property set aside by the bankruptcy court is still in the bankrupt, it is as

much exempt from levy and sale as to existing debts, where there is no valid waiver of homestead and exemption rights, as if it had been set apart by the ordinary of the State having jurisdiction. *Evans* v. *Rounsaville,* 115 *Ga.* 864 (42 S. E. 100). But this is not true as to debts contracted subsequently to the setting aside of the exemption. *Dozier* v. *McWhorter,* 113 *Ga.* 559. When the exemption is set apart to the bankrupt by the bankruptcy court, the title is in 'the bankrupt precisely as it was before. *Broach* v. *Powell,* 79 *Ga.* 79, 81, 82 (3 S. E. 763); *Bush* v. *Lester,* 55 *Ga.* 579, 581; *Broach* v. *Barfield,* 57 *Ga.* 601, 604; *Burtz* v. *Robinson,* 59 *Ga.* 763; *Laramore* v. *McKinzie,* 60 *Ga.* 532,. 534; *Brady* v. *Brady,* 67 *Ga.* 368; *Felker* v. *Crane,* 70 *Ga.* 484; *Anderson* v. *Brown,* 72 *Ga.* 713. The title being in the bankrupt, he can alienate the property set apart by the bankruptcy court before such time as he applies for and obtains a homestead and exemption under and by virtue of the constitution and laws of the State, as head of a family, or as having the care and support of dependent females. *Felker* v. *Crane,* 70 *Ga.* 484. When that is done, the property so set apart is also exempt from levy and sale until such time as the law provides it can be sold. When the property is set apart under the State law, the head of the family can sell it as provided in section 6584 of the Civil Code.

It appears from the authorities above cited, that at the time the defendant sold the property set apart as exempt by the bankruptcy court, and before he had applied for a homestead from the ordinary, as head of a family, under the State law, he had a right to sell the stock of goods to the vendees, and the latter would get a good title to the same, unless the goods were sold with the purpose to delay or defraud the creditors of the vendor, who have the right to subject the exemption, and this intention was known to the purchasers. Civil Code, §§ 3224 (2), 4109. The note given for the goods contains a condition that it shall not be paid by the makers if the title to the homestead and exempt property shall fail. This seems to indicate at least a suspicion on their part as to the genuineness of the title. Fraud in the sale of these goods being charged in the petition, and there being conflicting evidence on this subject, and insolvency being alleged as to the defendant, the court did not err in impounding the goods to await the final determination of the case.

3.  The order of the court requiring the impounding of the note given for the purchase-price of the goods is also assigned as error, because the payee thereof, Morris Pincus, was not a party to the case.  It does not appear from the record that Morris Pincus, the payee of the note, was a party to this suit, or was present at the trial and waived not being a party, nor does it appear that the defendant was in possession of the note.  It was error, therefore, to require the impounding of the note.  It was proper for the court to impound the goods pending the final trial, but not the note given therefor, where it appears that the payee was not a party to the suit.  He would be a necessary party before that could be done.  For this reason alone, we reverse the judgment of the court below.  No other errors appear in any of the assignments.

*Judgment reversed.    All the Justices concur.*

Fish, C. J., Evans, P. J., and Lumpkin, J., specially concurring.  We assent to the principle that property of a bankrupt set apart as an exemption by the bankruptcy court may be assigned by him, when not set apart as a homestead in the State court; but we can not give assent to all that is said in the opinion as reasons for reaching this conclusion.  In this case the property was assigned by the bankrupt after it had been set apart in the bankruptcy court, and a discussion bearing on its assignability prior to the exemption is irrelevant to the question for decision.